## Ratay *v.* Liu, Appellant.

548

Argued November 13, 1969.  Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joseph W. Serene,* with him *Serene and Fee,* for appellant.

*Blair V. Pawlowski,* for appellee.

OPINION BY MONTGOMERY, J., December 10, 1969:

In this trespass action brought by Charles J. Ratay, Jr., appellee, against Yu Chen Liu, appellant, for damages as a result of an automobile accident, a verdict in the sum of $7,500 was returned by a jury in the Court of Common Pleas of Indiana County. Appellant's motion for a new trial having been refused and judgment entered on the verdict, this appeal followed.

This appeal presents the narrow question of whether the trial court erred in admitting in evidence five exhibits containing a detailed listing of medical tests or treatments given to plaintiff-appellee by doctors or hospitals and a statement of charges therefor when said doctors or representatives from the hospitals were not called to testify at the trial. Appellant here and in the court below has contended that the verdict is excessive. However, since she makes that contention on the basis that the jury was permitted to consider the above medical expenses, we believe that the sole issue on this appeal is the evidentiary question aforesaid.

As a result of the automobile accident involving appellant which occurred on July 26, 1965, in the Borough of Indiana, plaintiff-appellee suffered personal injuries and property damage to his automobile in the amount of $716.27. Plaintiff complained of an injury to his back on the right side above the hip, evidenced by contusions thereto; headaches; and kidney and urinary disorders, evidenced by internal and external bleeding, which began the day after the accident. A few days after the accident he saw his family physician, Dr. Raymond L. Dandrea, who treated him for those injuries until October 23, 1965. However, in January, 1966, plaintiff twice was treated by Dr. Dandrea for severe nose bleed, for which Dr. Dandrea referred him to Dr. Cope, a specialist, in Indiana, Penn-

sylvania. Dr. Dandrea also referred plaintiff to Dr. Carney, a kidney specialist, in Johnstown, Pennsylvania. Twice in 1966 Dr. Carney sent plaintiff to Conemaugh Valley Memorial Hospital, where he was given a cystoscopic examination, X-rays, and urine and blood tests. With the approval of Dr. Dandrea,[1] plaintiff in 1966, 1967,[2] and 1968 went to the Cleveland Clinic Foundation, where on each of four visits he received X-rays, and urine and blood tests; and on the last occasion, in plaintiff's words, "They took a piece out of the kidney," which was described as a biopsy, a recognized procedure for making tests of the tissues of living bodies.

The five exhibits, all of which were admitted in evidence over appellant's objection, consist of the following. Exhibit D, Conemaugh Valley Memorial Hospital, October 24, 1966, for $638.30; Exhibit E, Conemaugh Valley Memorial Hospital, October 24, 1966, for $236.55; Exhibit F, Drs. Brisini, Carney, and Strunk, February 9, 1967, for $100; Exhibit G, Cleveland Clinic Foundation, June 27, 1966, for $154; Exhibit H, Cleveland Clinic Foundation, September 9, 1968, for $152.

At the trial the plaintiff testified that he had received all the services indicated on the above five exhibits and described them in great detail. Dr. Dandrea, who was the sole medical witness called by the

---

[1] Dr. Dandrea testified on direct examination, "He [plaintiff] indicated to me he would like to go to a clinic, to the Cleveland Clinic; and I told him to go ahead. He went out and made an appointment on his own, of course, because of the fact I couldn't find the answer to his back pain and the fact he had persistent appearance of blood cells in the urine and did have some hypertension . . . he indicated he wanted to go to the clinic, and I told him to go ahead."

[2] Statements for two visits in 1967 were not offered in evidence.

plaintiff, testified that all the charges appearing on the said five exhibits were reasonable and that all the services rendered therefor were necessitated by the automobile accident of 1965.

Appellant contends that these exhibits were inadmissible for the reasons that they are hearsay and not admissible under any exception thereto, that Dr. Dandrea was not qualified to express an opinion on their necessity, and there is no competent proof of their reasonableness or that they were paid. In support of these arguments, appellant points out that the record does not contain any proof that the work was actually performed, contending, for example, that Exhibit D contains an item, "Laboratory 265.50," but there is no testimony on what was done in the laboratory for this charge. She contends that only the hospital employees or hospital doctors can testify to that effect and, since they were not called to testify, she has lost the right of cross-examination. Furthermore, appellant complains that the results of the alleged tests and examinations indicated by the various exhibits are not in the record and thus an important element of the test of their necessity was unavailable to her.

The relevance of the exhibits was on the issue of the reasonableness of these medical charges. Such reasonableness can be determined not only from the direct evidence but also from the character of the injury and of the medical services and treatment as shown by the evidence in the case. *Fisher v. Pomeroy's, Inc.*, 322 Pa. 389, 185 A. 296 (1936). In proving special medical damages for personal injuries, proof should be offered (1) that the medical services were rendered, (2) what the reasonable charges are therefor, (3) that the services for which they were rendered were necessary, and (4) that they were related to the trauma suffered in the accident. See *Piwoz v. Iannacone*, 406 Pa. 588, 178 A. 2d 707 (1962).

Proof of the necessity of these medical services and their causal connection with the accident was offered through Dr. Dandrea's testimony. We think that on those issues Dr. Dandrea's testimony was sufficient. His testimony reveals that the plaintiff was his patient throughout the course of the treatment and tests that he received for which the questioned charges were made. Although Dr. Dandrea, himself, did not treat the plaintiff after January, 1966, he either sent him to specialists or ratified his action in submitting to tests and examinations. Although Dr. Dandrea stated that Dr. Carney's report was inconclusive, the record is silent on any results from the Cleveland Clinic. Both the plaintiff and Dr. Dandrea testified and the exhibits themselves disclose that at the Cleveland Clinic the plaintiff received no treatment but tests only, the nature of which were fully explained by the testimony. All the examinations and tests covered by the exhibits were made in an attempt to diagnose plaintiff's problems, all of which were testified by Dr. Dandrea to be necessitated by the accident. Thus, the results of these referrals were immaterial on the issue of damages. To hold otherwise would unreasonably bar a plaintiff from recovering money damages for seeking a diagnosis of his complaints as a result of an accident unless the results of such tests were revealed and shown to be in some manner related to the accident.

Appellant bases her objection to Dr. Dandrea's testimony as to the reasonableness of the charges in these exhibits on the fact that he did not supervise the tests by Dr. Carney, the Conemaugh Hospital, and the Cleveland Clinic rather than on the qualifications, which were not objected to at trial, of Dr. Dandrea to give an opinion on the reasonableness of medical charges. For the reasons stated above, we have held that Dr. Dandrea could testify on the necessity for the tests

since they were given with his approval. However, a physician has been held to be qualified generally to testify on the reasonableness of medical charges for services rendered by other doctors and hospitals. See discussion and cases in 12 A.L.R. 3d 1347.

The question remains whether the plaintiff, himself, was competent to testify what tests or treatments were given him and what charges were received therefor. A plaintiff cannot testify why medical tests were made. *Piwoz v. Iannacone,* supra. However, it has been held that a plaintiff may testify that he received certain services and certain charges for them. *Yost v. Philadelphia,* 174 Pa. Superior Ct. 555, 102 A. 2d 210 (1954). In *Knoble et ux. v. Ritter,* 145 Pa. Superior Ct. 149, 20 A. 2d 848 (1941), this Court held that exhibits, consisting of receipts for sums of money paid by the husband-plaintiff for the care of the wife-plaintiff at a sanitarium after the accident, were admissible, based on testimony that the wife-plaintiff was at the sanitarium for the period covered by the bills and that she was sent there by her physician because of her condition brought on by the accident. In *Stais v. Sears Roebuck and Co.,* 64 Dauphin 116 (1952), aff'd, *Stais v. Sears-Roebuck and Company,* 174 Pa. Superior Ct. 498, 102 A. 2d 204 (1954), aff'd, *Stais v. Sears-Roebuck and Company,* 378 Pa. 289, 106 A. 2d 216 (1954), doctor and hospital bills were held similarly admissible, where a wife-plaintiff, both on direct and cross-examination minutely and in detail described her condition before and after the fall, the nature and extent of her injuries, the time she was compelled to spend in the hospital or was confined to her bed, or otherwise incapacitated from doing any housework by reason thereof, the treatments received from the several doctors or taken on their advice, and the period of time she was under the care of each physician and the num-

ber of their visits. Likewise, in the present case, the plaintiff testified in full to the description of the tests given as represented by the various exhibits, specifically testified that all these tests actually were given, and corroborated Dr. Dandrea's testimony that they were taken at his advice. Therefore, we conclude that the questioned exhibits were fully supported by the plaintiff's testimony and that the lower court properly admitted them.

Judgment affirmed.