522 A.2d 628

**Lynn HAUCK, Individually and on Behalf of all Others Similarly Situated, Appellant,**

**v.**

**The OHIO CASUALTY GROUP OF INSURANCE COMPANIES.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1986.

Filed March 13, 1987.

Michael P. Malakoff, Pittsburgh, for appellant.

John C. Conti, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, WICKERSHAM *, ROWLEY, WIEAND, OLSZEWSKI, DEL SOLE, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge:

Once again, we are presented with a narrow issue under the Pennsylvania No-fault Motor Vehicle Insurance Act, (No-fault Act) Act of July 19, 1974, P.L. 489, No. 176, § 101 *et seq.* 40 P.S. § 1009.101 *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

On this appeal, we must determine whether a collateral insurer under the No-fault Act is obligated to reimburse an automobile accident victim for the difference between (1) the amounts accepted by the health care providers in full satisfaction of their bills and (2) the amounts shown as customary charges on bills provided to the victim for use in obtaining a double recovery. We conclude that the amount which a provider of goods and services accepts in exchange for the goods or services provided represents the best gauge of the reasonable charges actually incurred. Accordingly, we affirm the order denying recovery of unobligated customary charges.

In 1982, the victim, Lynn Hauck, was injured in an accident while a passenger in a motor vehicle. She was entitled to no-fault benefits under her father's insurance policy with Ohio Casualty. She also enjoyed Blue Cross/Blue Shield (BC/BS) coverage under a separate medical benefits group policy held by her father. The father had not elected, under Section 203(b) of the No-fault Act (40 P.S. § 1009.203(b)), to make the BC/BS group insurance the primary insurer in the event of medical claims, a process which would have resulted in a lower premium on the Ohio Casualty policy.

■ A victim may twice recover the charges incurred for medical care, when, as here, the victim may have BC/BS or other similar coverage which is available to pay the same

* This decision was reached prior to the resignation of Wickersham, J.

charges for which the no-fault insurer is liable. *Steppling v. Pennsylvania Manufacturers Association Insurance Co.*, 328 Pa.Super. 419, 477 A.2d 515 (1984).

As a result of the injuries sustained, the victim received medical treatment and services resulting in total billings of $25,265.69. Blue Cross/Blue Shield paid $10,475 in accordance with reduced payment agreements it had with the health care providers. Pursuant to the agreements between BC/BS and the providers, the reduced payments were accepted by the providers as fully discharging all of the billings which occurred as a result of the care which had been rendered the victim.

The victim thereafter submitted written claims to the collateral insurer, Ohio Casualty, for $25,265.69. Ohio Casualty paid the victim $10,475, the same amount already paid by BC/BS to the providers in full satisfaction of all claims.

The victim instituted this class action against Ohio Casualty, seeking: (1) declaratory relief that she and other class members were entitled under the No-fault Act to the full amount billed by providers; (2) an injunction prohibiting Ohio Casualty from paying less than the full amount billed; (3) damages equal to the difference between amounts paid and the full amounts of the bills in each instance; (4) interest on those amounts; and (5) costs and reasonable attorney fees. Ohio Casualty responded with preliminary objections in the nature of a demurrer and a motion for a more specific pleading. The Honorable Silvestri Silvestri sustained the demurrer, denied the motion for a more specific pleading and dismissed Hauck's complaint without leave to amend. This appeal followed.

We believe that this case must be determined by construing the language contained in Section 103 of the No-fault Act, which provides in pertinent part:

§ 103. **Definitions**

As used in this act:

. . . .

"Allowable expense" means reasonable charges incurred for, or the reasonable value of (where no charges are

incurred), reasonably needed and used products, services, and accommodations for:

(A) professional medical treatment and care;

(B) emergency health services;

(C) medical and vocational rehabilitation services;

. . . .

Looking to this section, the victim argues on appeal that the measure of allowable expense must be the reasonable value of medical treatment and care. She would have us ignore the reasonable charges incurred, and focus on the "reasonable value" language; since BC/BS paid all of her medical bills, the dispute in this case should not involve any charges directly incurred by the victim. Her contention is that Ohio Casualty should not be permitted to limit its payable benefits simply because she did not incur any economic loss and did not pay the reasonable value of the service rendered to her. She also argues that the language of Ohio Casualty's policy, which limits medical expense benefits to the reasonable charges incurred, is inconsistent with the No-fault Act.

Ohio Casualty does not dispute that the victim is entitled to receive basic loss benefits, nor does it dispute that she is entitled to the allowable expense. In fact, payment of $10,475 has already been made by the insurer. It does, however, disagree with the victim's interpretation of the measure of reasonable value.

We decline to analyze the issue before us on the basis of the meaning of "reasonable value" since the language of the statute is clear as to the proper criteria to be applied. Section 103 defines allowable expense as the reasonable charges incurred for medical treatment, care and services. It is only where no charges are incurred that we are permitted to consider the reasonable value of the services.

The victim would have us ignore the fact that charges were incurred and then paid by BC/BS to the providers. Her argument is that we should focus on the alternative statutory language, "the reasonable value of (where no

charges are incurred)" rather than the clear mandate, " 'Allowable expense' means reasonable charge incurred."

■ As we pointed out in *Fandray v. Nationwide Mutual Insurance Co.*, 313 Pa.Super. 186, 191 n. 2, 459 A.2d 801, 804 n. 2 (1983), in the course of interpreting the definition of "replacement services loss" in the No-fault Act, "it can be inferred that the word 'incurred' requires an actual expenditure or liability for service." The victim does not disagree with this point. However, she asks us to hold that no expenditure was made and no liability arose in this case, such that the allowable expense can be measured by the reasonable value of services. Faced with the fact that the providers received $10,475 for their services, we refuse to find either a lack of liability on the part of the victim or lack of payment on her behalf. In the context of the case before us, we also define "incurred" as the actual expenditure made on the victim's behalf.

Since we know that the charges incurred were $10,475, we have no difficulty in determining the allowable expense to which the victim is entitled under the No-fault Act.

The victim seeks to rely on *Johnson v. State Farm Mutual Auto. Insurance Co.*, 339 Pa.Super. 112, 488 A.2d 335 (1985) as support for her contention that she is entitled to the difference between amounts actually expended on her behalf and the customary higher billings of the providers. We find that case to be inapposite. In *Johnson*, we were faced only with the net loss of the victim and the question of whether a no-fault insurer could escape payment of the full amount previously satisfied by BC/BS on a theory of joint obligors under Section 204(b) of the No-fault Act. We held that BC/BS was not an obligor under the Act and thus the motor vehicle insurer was not entitled to share the net cost of medical expenses with the health insurer. There is nothing in *Johnson* to suggest that an obligor under the Act may be required to pay more than the actual charges incurred in a case involving double recovery.

The victim also argues that since no election was made pursuant to Section 203(b) of the No-fault Act to make Ohio

Casualty's coverage secondary to BC/BS, she is entitled to receive full benefits under both policies. The short answer to this contention is that the extent of full benefits is controlled by the proper definition of "allowable expense" as set forth above. Where the statute provides a clear standard by which to measure full benefits, namely, the reasonable charges actually incurred, it is of no consequence that bills may be generated which exceed the amounts actually paid in full satisfaction of all claims.

Appellant did not allege in her complaint that she would have been liable for the face amount of the bills, and concedes that she is not required to pay the difference between the Blue Cross/Blue Shield payment and the face amount of the bills. As such, the "reasonable charges incurred" could not logically exceed the amount the providers accepted from Blue Cross/Blue Shield as payment in full to discharge appellant's obligation to the health care providers.

We find no ambiguity or lack of clarity in Section 103 of the No-fault Act. Were it to be suggested that the Act should be interpreted otherwise than we now declare, we would submit that the conclusion reached by the distinguished trial judge in this case, the Honorable Silvestri Silvestri, is well founded. Judge Silvestri determined that the no-fault system was designed to promptly reimburse victims for the cost of services actually incurred, and to restore these victims to their pre-accident status. He reached this conclusion from reading the language of the No-fault Act in harmony with the Act's goals of restoration, adequate compensation and reasonableness. We agree with the trial court that allowing the victim to recover the difference between the amount billed and the amount accepted as payment in full would contravene the notion of compensating and restoring motor vehicle accident victims, because the victim would thereby receive more than provided for under the Act.

■ Although double recovery allows a victim to receive compensation in excess of actual damages, this phenomenon

exists because insurance law dictates that someone who has paid two separate premiums for separate policies covering the same potential liability is entitled to recover under each policy. The Ohio Casualty policy here under review tracks the language of the Act in requiring payment by the insurer for all reasonable charges incurred. We thus conclude that payment by the insurer of allowable expenses as fixed by the amounts accepted by the health care providers as payment in full discharge of the victim's entire liability constitutes full compliance with the mandate of the No-fault Act.

Accordingly, we affirm the order which dismissed the individual and class action suit without leave to amend.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

With the greatest respect to my colleagues, I find I must dissent from the Opinion of the Majority in this case.

I believe that the analysis in the previously filed Opinion by Judge Harry Montgomery is a correct analysis of the factual situation and I quote that herein at length.

"The instant appeal raises a question of first impression in the appellate courts of our Commonwealth concerning certain obligations of an insurer under the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101, et seq., repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984. The Plaintiff-Appellant, Lynn Hauck, instituted this class action against The Ohio Casualty Group of Insurance Companies, the Defendant-Appellee, seeking the recovery of additional payments for medical charges she incurred as a result of injuries she suffered in a motor vehicle accident. Her theory of recovery, as more fully discussed below, was the subject of a preliminary objection in the nature of a demurrer filed by the Appellee.

The lower court sustained that preliminary objection, and dismissed the Complaint without leave to amend.[1]

"It is well-established that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material factual averments, as well as all inferences fairly deducible therefrom, but not conclusions of law, or unjustified inferences. *Chorba v. Davlisa Enterprises, Inc.*, 303 Pa.Super. 497, 450 A.2d 36 (1982); *DeSantis v. Swigart*, 296 Pa.Super. 283, 442 A.2d 770 (1982). In addition, we note that in the instant case the lower court also considered certain facts which were admitted by both parties, which facts have also been reasserted by the parties in the course of the instant appeal. Accordingly, we derive the factual background in this case from both the Appellant's Complaint, and from relevant facts which have been agreed to and asserted by both parties. Thus, it appears that on November 13, 1982, Ms. Hauck was injured in an automobile accident while a passenger in a motor vehicle operated by Bernard Gray, III. On the date of the accident, Hauck resided with her father, Robert, who had motor vehicle insurance issued by the Appellee, in a policy providing benefits required by the No-fault Act. The coverage of that policy extended to Mrs. Hauck, who was then also covered by a Blue Cross/Blue Shield (hereinafter referred to as 'BC/BS') medical benefits group policy under which her father had coverage. It bears mention that Robert Hauck had never made an election under Section 203 (40 P.S. § 1009.203) of the No-Fault Act to make the BC/BS group insurance the primary carrier in the event of medical claims, a process which would have resulted in a lower premium on his No-fault policy from the Appellee.

"The Appellant incurred significant medical bills from various health care providers as a result of the injuries she received in the automobile accident. While the total billings by such health care providers amounted to $25,265.69,

---

1. The lower court simultaneously denied the Appellees' preliminary objection seeking a more specific pleading from the Appellant. That ruling was not appealed by the Appellee, and is therefore not in issue before us on this appeal.

BC/BS was able to take advantage of reduced payment agreements it had with such health care providers, so that it only paid $10,475.00 for the care rendered by such providers. Pursuant to the agreements between BC/BS and the health providers, the reduced payments were accepted by the providers as fully discharging all of the billings which occurred as a result of the care which had been rendered to the Appellant.

"Thereafter, Ms. Hauck submitted written claims to the Appellee for $25,265.69, the total amount of the charges submitted by the health care providers. The Appellee paid the Appellant only the $10,475.00 which the health care providers had accepted in full payment from BC/BS under their agreements with that insurer. The instant class action suit was thereafter instituted by Ms. Hauck, on behalf of herself and all those similarly situated, seeking: declaratory relief that she and other class members were entitled under the No-fault Act to the full amount billed by health care providers; an injunction prohibiting the Appellee from paying its insureds less than the full amount billed by providers; damages equal to the difference between what the Appellee paid and full amount of health care providers' bills in each instance; interest on said amounts; and costs and reasonable attorney fees.

"In proceedings before the lower court, and again on this appeal, the parties have agreed that when a health care provider is involved in a participation agreement with BC/BS, such provider agrees to accept a fixed fee from BC/BS for a service, which is ordinarily lower than the customary amount charged by the health care provider to any other payer for the same service. Further, the health care provider agrees not to bill the patient for the difference between the amount paid by BC/BS, and the customary fee which would have ordinarily been charged to the patient or other payer.

"The obligations of the Appellee No-fault insurer in the instant case, and the Appellant insured's right to recover, arose under specific provisions of the No-fault Act. Section

202, 40 P.S. § 1009.202 permitted a recovery for four types of losses, including "allowable expenses". The term "allowable expense" was defined in Section 103, 40 P.S. § 1009.-103, in pertinent part, as follows:

"Allowable expense" means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

(A) professional medical treatment and care;

(B) emergency health services; ...

"It is pertinent to note that this Court has held that under the aforesaid statutory provisions, a claimant may recover the charges incurred for medical care twice, when, as here, he or she may have BC/BS or other similar coverage which is available to pay the same charges for which the No-fault insurer was liable. See *Steppling v Pennsylvania Manufacturers Association Insurance Co.*, 328 Pa.Super. 419, 477 A.2d 515 (1984). Thus, the existence of alternative coverage which may pay all or part of the medical costs incurred by a No-fault claimant does not defeat the right of that claimant to recover the full amount of the benefits provided under the No-fault policy. The only exception is when the insured has elected to make the alternate coverage primary in payment responsibility, under Section 203, as mentioned earlier, and derives a lower No-fault premium as a result.

"In resolving the central issue in the instant case of whether or not an insured like the Appellant was entitled to recover the full amount of the customary charges assessed by the medical providers who furnished care and/or supplies to her as a result of her motor vehicle related injuries, or only the reduced amount paid such medical providers by BC/BS because of its special contractual relationship which such providers, the Court of Common Pleas of Allegheny County determined that the terms of the Act quoted above only required the insurer to pay the reduced amount paid by BC/BS. The lower court's order was entered on March 19, 1985. The Appellant has pointed out to us that two other

Courts of Common Pleas have thereafter reviewed the identical issue in other cases, and have reached a conclusion opposite to that of the Allegheny County Court. In the case of *Brower v. Nationwide Mutual Insurance Company,* in the Court of Common Pleas of Blair County, at No. 1283 C.P. 1983, the court concluded that the injured plaintiff was entitled under the No-fault Act to recover the full amount of the hospital bill arising from her motor vehicle-related rather than the reduced amount which represented the actual payment by BC/BS pursuant to its agreement with the hospital. Similarly, examining an identical fact situation in the case of *Spera v. General Accident Fire and Life Assurance Corporation, Ltd.,* filed at No. 79–21673, the Court of Common Pleas of Montgomery County, Civil Division, held that the No-fault carrier was responsible for the full amount of the hospital bill, and was not entitled to benefit by the savings arising from the lesser payment by BC/BS as a result of its contractual arrangement with the hospital. In their respective opinions, the Courts of Common Pleas of Blair and Montgomery Counties each recognized the existence of the holding of the Court of Common Pleas of Allegheny County in the instant case, but both rejected its reasoning.

"After a thorough review, we are also constrained to conclude that the lower court in the instant case has erroneously construed the applicable provisions of the No-fault Act. Our conclusion is based upon the specific language of the Act, as well as upon guidance we perceive in other cases construing that statute.

"It can safely be said that there is no statutory language whatsoever which specifically provides or even implies that a No-fault insurer is entitled to the benefit of a payment by any other applicable coverage, with the sole exception of the situation wherein an insured elects to reduce the cost of the no-fault coverage by electing to make another basic loss coverage plan primary in the event of any loss, under Section 203. Therefore it is evident that there was no legislative intent to allow a No-fault insurer to limit its

obligations, in the absence of a Section 203 election by the insured, to pay the full "reasonable charges incurred". This conclusion regarding the intent of the legislature to make No-fault insurers fully liable is buttressed in further language in Section 103, where it is provided that the 'allowable expense' which the insurer had an obligation to pay would even include the 'reasonable value of' medical products, services and accommodations, even 'where no charges are incurred' by the insured. The lower court's allowance of a reduced obligation by the Appellant insurer in this case is inconsistent with the clear legislative intent to avoid reduced payment obligations by insurers in situations covered by the No-fault Act.

"In a situation like that presented in the instant case, where the insured did not elect to make his No-fault coverage secondary to BC/BS, or any other coverage plan, he must be deemed to have elected to have a double recovery in the event of an injury covered under both his BC/BS plan, and the insurance he purchased from the Appellee. It is evident that Mr. Hauck paid for double coverage, and a consequential full right of recovery for all available benefits from each insurer. No doubt the BC/BS policy which covered him and his daughter provided that BC/BS would fully cover medical liabilities incurred as the result of personal injuries suffered by its insureds, within the circumstances presented by the unfortunate accident which involved the Appellant. With regard to the Appellee, Mr. Hauck presumably fully paid for the policy coverage which he received, which entitled him and his daughter to recover the full 'reasonable charges incurred for' professional medical treatment and care and emergency health services arising out of a motor vehicle injury. To award less in these circumstances from the Appellee would not be consistent with the terms of the agreement under which Mr. Hauck and his insured family members enjoyed coverage from that insurer.

"On this appeal, the Appellee does not dispute the Appellant's right to a double recovery. However, it does main-

tain that it has a right to benefit by the reduced amount of payment made by BC/BS. There is no suggestion whatsoever in the record of this case that the customary charges of the Appellant's medical providers were not 'reasonable', or otherwise within the stated qualifications of 'allowable expenses' under the No-fault Act. Moreover, if the Appellant did not enjoy the benefit of BC/BS coverage through her father's policy, there can be no question that she would have been fully obligated to pay the customary charges of the medical providers, or that the Appellee would have paid such charges in full had it made payment directly to the providers itself. Thus, the only basis for a reduced payment by the Appellee in this case is the special arrangement negotiated by BC/BS with the providers, wherein they agreed to accept a lesser payment from BC/BS, and it alone, in full satisfaction of their bills. One may not logically deduce that the higher customary charges of the providers must be considered 'unreasonable', within the meaning of Section 103 of the Act, merely because of the existence of participation agreements between the providers and BC/BS.

"While we understand the rationale of the Allegheny County Court, we simply do not agree with it. In our review, we cannot ignore that where the construction of insurance provisions is involved, there is a longstanding policy in our Commonwealth to liberally construe them in favor of the insured in any close or doubtful case. See *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 455 A.2d 122 [1222], 1225, n. 3 (1982), citing *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 186–188, 401 A.2d 1160, 1162–63 (1979), aff'd, *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 454–455, 421 A.2d 629, 633 (1980). Adopting, as we must, that standard of construction in the instant case, we are further convinced that the lower court has erred in its determination that the Appellee was entitled to pay less than the amounts charged by the medical providers, merely because another insurer had a special contractual relationship with such medical providers which allowed the payment of a lesser amount in full satisfaction

of the amounts ordinarily billed. There may be many reasons why medical providers would agree to accept such reduced amounts from a particular insurer, especially when that insurer involved has such a wide scope of coverage of a large segment of the population in a given coverage area. In essence, the lower court appears to have determined that the acceptance of a lesser amount by the medical providers who furnished care to Ms. Hauck must mean that the ordinary charges asserted by the medical providers for such care were 'unreasonable'. We cannot adopt such a finding, especially at the preliminary objection stage of the case, when there is a complete absence of any evidence in the record to support such a conclusion.

"The lower court's opinion declares that the result it reached will help avoid the receipt of a "windfall" by Ms. Hauck. However, our Court has clearly held that when an insured has paid for the cost of duplicate coverage, it is proper and permissible that he or she enjoy the full benefits of such double payment or reimbursement. See *Johnson v. State Farm Mutual Automobile Insurance Co.*, 339 Pa.Super. 112, 488 A.2d 335 (1985), a particularly analagous case in which the insurer attempted to share the cost of medical expenses with a health care provider, but this Court required a full double recovery by the insured. See also *Steppling v. Pennsylvania's Manufacturers Association Insurance Co., supra.* Therefore, in light of the appellate guidance available to the lower court in this case, its finding that a full recovery by the Appellant from the Appellee would constitute a windfall must be considered irrelevant to the determination of whether such recovery would be proper under the terms of the applicable statute."

What the Majority has done in this case in adopting a view contrary to that expressed by Judge Montgomery as set forth above is to effect a change in the definitions contained in the statute. Section 103 of the No-fault Act provides that "allowable expense means reasonable charges incurred for ..." in my view, that refers to the charges incurred by the claimant/insured and not by a third-party

insurer such as Blue Cross/Blue Shield for the same services. When the Majority says "we conclude that the amount which a provider of goods and services accepts in exchange for the goods or services provided represents the best gauge of the reasonable charges actually incurred." (Opinion at page 372) the Majority is first adding words to the definition sections (the word "actually") and, two, ignoring that the amount of the bill incurred by the claimant in this case is for the full amount of the hospital bill and not the amount negotiated between Blue Cross/Blue Shield and the health care provider. For these reasons, I respectfully dissent.