522 A.2d 635

**Dorothy E. BROWER**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1986.

Filed March 13, 1987.

386

Karen E. Pfeffer, Altoona, for appellant.

Richard M. Serbin, Altoona, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, WICKERSHAM *, ROWLEY, WIEAND, OLSZEWSKI, DEL SOLE, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge:

This case presents the question of whether Section 203 of the Pennsylvania No-fault Motor Vehicle Insurance Act,

* This decision was reached prior to the resignation of Wickersham, J.

(No-fault Act), Act of July 19, 1974, P.L. 489, No. 176, § 203, 40 P.S. § 1009.203, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984, affords any basis for requiring an insurer to pay collateral benefits in excess of the reasonable charges incurred for medical treatment by a motor vehicle accident victim. We think it does not. We reverse the order which granted summary judgment to the victim.

In March of 1983, Dorothy E. Brower (Brower) sustained serious injuries as a pedestrian when struck by a motor vehicle insured by Nationwide Mutual Insurance Company (Nationwide). Brower, who lived alone, did not own a motor vehicle. She did maintain coverage under a medical benefits group policy with Blue Cross/Blue Shield (BC/BS).

As a result of the injuries sustained, Brower received medical treatment and services at the Nason Hospital resulting in total billings of $31,148.35, after subtracting a minor sum for television services ($27) which was paid by Brower. Of this amount, BC/BS paid $9,000 directly to the hospital, following a reduction write-off of $17,106.35 based upon a reduced payment agreement between the hospital and BC/BS. A final payment by BC/BS in the sum of $300 was made to the hospital.

Brower made a demand upon Nationwide for payment to her in the sum of $26,106.35, representing the aggregate of the actual payment first made by BC/BS to the hospital ($9,000) and the write-off or allowance ($17,106.35). In response, Nationwide tendered its check to Brower for $9,000 pointing out that it was prepared to satisfy any final cash balance due the hospital after all BC/BS payments and allowances were completed. Nationwide refused to pay Brower for the amount of the write-off which BC/BS had allowed to the hospital pursuant to the agreement between BC/BS and the hospital.

This suit was instituted against Nationwide to recover the amount of the write-off. Following the close of pleadings, the trial court granted Brower's motion for summary judgment, holding that Section 203(a) of the No-fault Act enti-

tled Brower to receive back from Nationwide "the savings of the $26,106.35 occasioned by her BC/BS insurance coverage." We reverse.

In a companion case *Hauck v. Ohio Casualty Group of Insurance Companies,* 361 Pa.Super. 370, 522 A.2d 628 (1987) (Opinion by Johnson, J.) we determined that double recovery, while permitted under the law set forth in *Steppling v. Pennsylvania Manufacturers' Association Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984), is limited to an amount not exceeding the reasonable charges actually incurred by the victim. We held therein that the amount which a provider of goods and services accepts in discharge of all claims against the patient-victim represents the best gauge of the charges incurred.

While appellant Hauck in the companion case did argue that she was entitled to recover an amount above and beyond the actual payments to the hospital on the basis that no election had been made by the insured under Section 203(b) of the No-fault Act, we were not required to construe the language contained in Section 203 since the determination of the "allowable expense" is governed by the definition of that term in Section 103 of the Act.

In the case now before us, both the trial court and Brower, the appellee, have read Section 203 as requiring payment of benefits beyond an amount equal to the charges actually incurred. We reject that analysis. Section 203(a) provides as follows:

> If benefits other than no-fault benefits are provided to an individual through a program, group, contract or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a vicitm or the survivor of the deceased victim injured as a result of an accident in the absence of no-fault benefits, then *any reduction or savings in the direct or indirect costs* to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit. (emphasis added).

■ We read Section 203(a) as a legislative command that a provider of health insurance benefits may not realize a savings in the *costs* associated with providing a group contract, if those cost savings result from the existence of no-fault insurance benefits, without either passing on those savings in costs to the consumer or enhancing the program of benefits available at the same premium price. Applying Section 203(a) to the facts in the instant appeal, Blue Cross/Blue Shield would have been obligated to return any premium savings to Brower, to the extent that BC/BS determined that they could provide the same level and scope of coverage at a lower premium by virtue of the economically ameliorative effects of a no-fault insurance plan within the Commonwealth.

■ In the instant case, Brower did not even purchase no-fault insurance coverage. Standing alone, this would not preclude her entitlement to a reduction in her BC/BS premiums upon a showing that the existence of no-fault benefits did, in fact, reduce the costs surrounding her health insurance coverage. However, no facts have been averred which would permit us to reach such a conclusion.

We do not know the premium cost which Brower, or someone on her behalf, has paid for her BC/BS coverage. However, we can conclude from the record before us that that cost, whatever it might have been, was not reduced as a direct result of the existence of no-fault benefits. We assume that some direct relationship exists between the premium paid for group benefits and the total amounts which the group insurer expends to satisfy claims under any given plan. Brower's receipt of collateral benefits under the tortfeasor's motor vehicle insurance policy in no way determined or affected the BC/BS payments made to the Nason Hospital. All the payments made by BC/BS were determined strictly on the basis of the charges appearing on the hospital bill and the reduced payment agreement between the hospital and BC/BS.

The mere fact that double recovery without setoff is permitted, or required, under *Steppling, supra,* suggests

that the likelihood of a possible reduction or savings in the direct or indirect costs to Brower of her BC/BS package is non-existent.

Appellee Brower would have us replace the term "cost" with the term "reasonable value" in interpreting Section 203(a) of the Act. Finding no lack of clarity in the statute, we decline to do so.

The record suggests that there may be some minor sums remaining due the victim following final payment by BC/BS to the Nason Hospital of the reasonable charges incurred. Brower is entitled to receive from Nationwide a sum equal to the amounts paid by BC/BS in final satisfaction of her hospital bill. She is not entitled to receive any sum representing the difference between the actual charges incurred and the original hospital statement.

We reverse the order granting summary judgment to the appellee, Brower, and remand for further proceedings consistent with this opinion.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

With the deepest respect to my colleagues, I must dissent from their determination in this case. I might point out that my reasons for taking the opposite view have been set forth in *Hauck v. Ohio Casualty Group of Insurance Companies*, 361 Pa.Super. 370, 522 A.2d 628 (1987), (Dissenting Opinion by Del Sole, J.) and I continue to adhere to that view. Specifically, the Majority once again says "we determine that double recovery, while permitted under the law ... is limited to an amount not exceeding the reasonable charges actually incurred by the victim." The Majority then, in my view, erroneously, defines reasonable charges actually incurred by the victim as being the amount the victim's insurer under a Blue Cross/Blue Shield plan pays a health care provider, that amount being totally unrelated to the reasonableness of the charges incurred by the victim but based upon comprehensive business relationship be-

tween the hospital and Blue Shield. It is my view, quite simply, that incurred by the victim does not mean paid by the victim's health care insurer. For these reasons and those set forth in my Dissenting Opinion in *Hauck*, I dissent.