638 A.2d 980

**Barbara KASHNER and George Kashner, Her Husband, Appellants,**

**v.**

**GEISINGER CLINIC, Arthur Thompson Colley, M.D.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1993.

Filed Feb. 1, 1994.

Reargument Denied April 11, 1994.

Richard C. Angino, Harrisburg, for appellants.

David J. Felicio, Dansville, for appellees.

Before McEWEN, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from the December 28, 1992 order denying appellants' Motion for Additur and/or a New Trial on Damages. Appellants, Barbara and George Kashner, present the following questions for our review:

A. Did the Trial Judge err by refusing to permit the jury to consider medical bills in the amount of $241,089.31 incurred by Plaintiff Barbara Kashner because those bills had been "paid" by a separate, although related, corporate entity?

B. Did this action violate the "Collateral Source Rule"?

Appellants' Brief at 3. For the reasons set forth below, we reverse and remand.

The relevant facts, as stated by the trial court, are as follows:

On February 8, 1988, the plaintiff Barbara Kashner (Mrs. Kashner) visited the Shamokin State General Hospital emergency room complaining of pain in the lower right abdominal area. Blood tests showed Mrs. Kashner to have

an increased white blood count with a "left shift" indicative of a possible infectious process. The Plaintiff was examined by Dr. Patrick D. Pugliese, who, after ruling out the possibility of appendicitis, made a preliminary diagnosis of gastroenteritis. In order to rule out any possible gynecological problems, Dr. Pugliese ordered a gynecological consult by Dr. Fernando C. Lagrimas. Dr. Lagrimas' exam turned up no major gynecological problems, but he did make an erroneous diagnosis of Mittelschmerz or middle of the month pain, at a time when the Plaintiff was menstruating which, amazingly, according to Dr. Lagrimas' testimony at trial, was made in order to justify his consult. Mrs. Kashner was told her symptoms would subside in a few days, and she was sent home.

A few days later, February 12, 1988, Mrs. Kashner returned to the Shamokin Hospital emergency room with complaints of abdominal pain. More tests were run and appendicitis was again ruled out. She was diagnosed as having a small bowel obstruction and was transferred to the Geisinger Medical Center (G.M.C.) for further testing. After several days of testing at the G.M.C., the possibility of appendicitis was ruled out and Mrs. Kashner was diagnosed as having a Resolving Ileus and Proximal Gastritis. She was discharged on February 17, 1988.

On February 19, 1988, because of Mrs. Kashner's acute pain, her family summoned an ambulance to transport her to the G.M.C. The responding paramedics decided that due to the Plaintiff's grave condition, she would not survive the trip to the G.M.C. and instead took her to the Shamokin Hospital. Upon her arrival at the Shamokin Hospital, Dr. Edward Twiggar performed emergency surgery during which he removed the Plaintiff's appendix, thereby saving Mrs. Kashner's life. At this time Dr. Twiggar made a diagnosis of a burst gangrenous appendix.

After the operation Mrs. Kashner's condition continued to be serious. Due to an abdominal infection, she developed Adult Respiratory Distress Syndrome and had to be placed on a ventilator. On March 6, 1988, it was decided that Mrs.

Kashner was stable enough to be transferred to the G.M.C. via Life Flight. Upon her arrival at G.M.C., Mrs. Kashner was placed in the intensive care unit, where she remained for the next 87 days.

During her stay in intensive care, Mrs. Kashner's future was in doubt several times. Several more surgical procedures were necessarily performed, including an exploratory Laparotomy, a Tracheotomy and the insertion of a right subclavian Swan–Ganz. At one point the catheter of the Swan–Ganz was cut by mistake and surgery was required to remove it. Also, while still in intensive care., Mrs. Kashner suffered an infarct (stroke) on the left side of her brain. Finally, on June 17, 1988, after a stay of 103 days, Mrs. Kashner was discharged from the G.M.C.

In March of 1990, Mrs. Kashner again spent 11 days at the G.M.C., during which a Post Diverting End Ileostomy was performed. This procedure was necessary in order to remove the "bag" which was attached to the Plaintiff's bowel approximately two years earlier, at the beginning of her lengthy ordeal. This "bag" was cumbersome and required constant care and cleaning. In April, 1992, on the eve of the originally scheduled trial of this matter, Mrs. Kashner was again admitted to the G.M.C. A bronchoscopy revealed a lung infection and surgery was performed in order to remove a portion of the Plaintiff's right lung.

On March 11, 1988, the G.M.C. approved Mrs. Kashner for their Charity Care Program. A fraction of her bills were paid for by the Department of Public Welfare, the remainder of her bills were "written off" by the G.M.C.

Trial Court Opinion, December 28, 1992, at 1–4.

On December 22, 1989, appellants filed a complaint against several physicians, including Arthur Colley, and their employers, the Geisinger Medical Center (hereinafter "GMC") and the Geisinger Clinic (hereinafter "Clinic"), alleging negligence in the failure to diagnose acute appendicitis and seeking damages in excess of $1.2 million. Prior to the start of trial, several defendants were dismissed by stipulation. In addition, the GMC filed a motion *in limine* seeking to limit the amounts

of medical bills provable by appellants to those amounts paid for by the Department of Public Welfare (hereinafter "DPW") on their behalf. The GMC's motion was granted and the case proceeded to trial on October 13, 1992. On October 26, 1992, the jury returned a verdict finding Geisinger Clinic 50% negligent, and Arthur Colley 50% negligent.[1] The jury awarded appellants damages in the amount of $134,510.29.[2] Appellants subsequently filed post-verdict motions for additur and, in the alternative, a new trial limited to damages. The trial court denied these motions and this timely appeal followed.

Appellants first contend that as the trial court erred by refusing to permit the jury to consider medical bills in the amount of $241,089.31 incurred by appellant Barbara Kashner in excess of the $59,510.29 paid by the DPW, there should be a new trial limited to the issue of damages. We agree.[3]

■ Preliminarily, we point out that "[o]ur standard of review for rulings on the exclusion of evidence is very narrow. An appellate court will reverse the ruling of the trial court only for an abuse of discretion or error of law." *Gemini Equipment v. Pennsy Supply*, 407 Pa.Super. 404, 413, 595 A.2d 1211, 1215 (1991) (citing *Concorde Investments v. Gallagher*, 345 Pa.Super. 49, 56, 497 A.2d 637, 641 (1985)). With this standard in mind, we will proceed to the merits of appellants' charge of error.

In the instant action, the trial court limited the amount of medical expenses provable by appellants to those amounts paid for by the DPW.[4] In doing so, the trial court relied upon *Hauck v. Ohio Casualty Group of Ins. Cos.*, 361 Pa.Super. 370, 522 A.2d 628 (1987), *appeal denied*, 516 Pa. 641, 533 A.2d 712 (1987) and its companion case, *Brower v. Nationwide Mut.*

1. Geisinger Clinic and Arthur Colley are the appellees in the instant appeal.

2. Specifically, the jury awarded appellants $59,510.29 for medical expenses and $75,000 for pain and suffering.

3. As a result of our disposition of this issue, we need not address appellants' second claim.

4. As mentioned above, the DPW paid a fraction of Mrs. Kashner's medical bills. The remainder was "written off" by the GMC.

*Ins. Co.,* 361 Pa.Super. 385, 522 A.2d 635 (1987), *appeal denied,* 518 Pa. 634, 542 A.2d 1364 (1988), for the proposition that a plaintiff's recovery of medical expenses is limited to the amount which was actually paid for the medical services. However, we find such reliance to be misplaced. This court's holding in *Hauck* and *Brower* was based upon our interpretation and application of the Pennsylvania No–Fault Act. *See Hauck* at 373, 522 A.2d at 630 ("We believe that this case must be determined by construing the language contained in Section 103 of the No-fault Act....."). Hence, neither *Hauck* nor *Brower* are applicable to the instant action.

 It is well-settled that a plaintiff in a personal injury action seeking damages for the cost of medical services provided to him as a result of a tortfeasor's wrongdoing is entitled to recover the reasonable value of those medical services. *See, e.g., Ratay v. Yu Chen Liu,* 215 Pa.Super. 547, 551, 260 A.2d 484, 486 (1969). While we agree that the amount that was actually paid to the GMC for Mrs. Kashner's medical services may be relevant in determining the reasonable value of those services, *see, e.g., Knoble v. Ritter,* 145 Pa.Super. 149, 156–57, 20 A.2d 848, 851 (1941), the trier of fact must look to a variety of other factors in making such a finding. Among those factors to be considered by the jury are the amount billed to the plaintiff,[5] and the relative market value of those services.[6]

Clearly, the amount actually paid for medical services does not alone determine the reasonable value of those medical services. Nor does it limit the finder of fact in making such a determination. *See Brown v. White,* 202 Pa. 297, 312, 51 A. 962, 965 (1902) (the damages entitled to plaintiff for medical expenses are determined by assessing what would reasonably

5. *See Kravinsky v. Glover,* 263 Pa.Super. 8, 24, 396 A.2d 1349, 1357 (1979) (where the medical services rendered were found to be necessary, the bills for those services were properly admitted into evidence); *Ratay v. Yu Chen Liu,* 215 Pa.Super. 547, 260 A.2d 484 (1969).

6. *See Eagle v. Snyder,* 412 Pa.Super. 557, 604 A.2d 253 (1992) (reasonable value of medical services may be determined through expert testimony regarding the market value of the medical services provided based on the average charges in the region where the services were performed).

compensate the physicians providing the services regardless of what the physicians had actually been paid). *See also* D. Dobbs, Handbook on the Law of Remedies § 8.1, at 543 (1973) ("The measure of recovery is not the cost of services ... but their reasonable value.... [R]ecovery does not depend on whether there is any bill at all, and the tortfeasor is liable for the value of medical services even if they are given without charge, since it is their value and not their cost that counts."); Restatement (Second) of Torts § 924 comment f (1979) ("The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to injured person, as when a physician donates his services."). Hence, we find that the trial court erred in precluding appellants from proving medical expenses in excess of those amounts paid for by the DPW.

■ Appellees contend, however, that as the Clinic and the GMC are part of the same medical group, the Clinic should be credited with the GMC's forgiveness of Mrs. Kashner's medical bills. This argument is without merit.

■ It is only where the tortfeasor himself makes a payment towards his tort liability that the payment will have the effect of reducing his liability. Restatement (Second) of Torts § 920A comment a ("If a tort defendant makes a payment towards his tort liability, it of course has the effect of reducing his liability."); D. Dobbs, Handbook on the Law of Remedies § 8.10 at 583 (where plaintiff's medical costs are paid by the defendant, the defendant is entitled to a corresponding reduction in liability). *See, cf., Denardo v. Carneval,* 297 Pa.Super. 484, 495, 444 A.2d 135, 141 (1982) (" 'Clearly, the fact that an injured party has received compensation from a source *other than the wrongdoer* is without relevancy in a suit brought by the injured party against the wrongdoer to recover damages.' ") (emphasis added), quoting *Moidel v. Peoples Natural Gas Co.,* 397 Pa. 212, 154 A.2d 399 (1959). As appellees themselves admit, it was the GMC who forgave the medical bills which were not satisfied by the DPW's payment. Hence,

the Clinic is not entitled to any reduction in liability for the GMC's "payment" of medical bills.[7]

Appellees argue, nonetheless, that as the GMC and the Clinic are the same entity, the GMC's forgiveness of Mrs. Kashner's medical bills should be credited to the Clinic. Appellees support this contention by pointing out that although separately incorporated, both the Clinic and the GMC share a parent corporation, the Geisinger Foundation, which has the power to appoint the corporate members of both the Clinic and the GMC who in turn elect their respective boards of directors. In addition, appellees point out that both the Clinic and the GMC share a trust fund which is used to satisfy judgments entered against either corporation.

Our Supreme Court has held that "courts will disregard the corporate entity only in limited circumstances when used to defeat public convenience, justify wrong, protect fraud or defend a crime." *Kiehl v. Action Mfg. Co.*, 517 Pa. 183, 190, 535 A.2d 571, 574 (1987) (citing *Wedner v. Unemployment Compensation Bd. of Review*, 449 Pa. 460, 296 A.2d 792 (1972)); *Shelburne Sportswear, Inc. v. City of Philadelphia*, 422 Pa. 199, 203, 220 A.2d 798, 800 (1966) (citation omitted). Here, appellees request that we disregard the corporate form to allow the Clinic to receive credit for the GMC's forgiveness of Mrs. Kashner's medical bills. We do not find this to be sufficient reason for us to disregard the Clinic's status as a separate corporate entity.

Clearly, the Clinic realized benefits from separate incorporation. In their brief, appellees point out that the Clinic was separately incorporated so that it would be considered a separate health care provider under the Pennsylvania Health Care Services Malpractice Act, 40 P.S. § 1301.101, *et seq.* One resulting benefit is that the Clinic has its own coverage

7. We point out that the record indicates that a small portion of Mrs. Kashner's medical bills were charged by the Clinic. Like the GMC, the Clinic accepted payment by the DPW for these services and the Clinic forgave the charges which remained unsatisfied. Hence, the amount of damages assessed against the Clinic should be reduced to the extent that the reasonable value of the medical services provided and billed by the Clinic exceeds the DPW's payment.

limit under the Professional Liability Fund. *See* 40 P.S. § 1301.701(d) ("The limit of liability of the fund shall be $1,000,000 for each occurrence *for each health care provider* and $3,000,000 per annual aggregate *for each health care provider.*") (emphasis added). Moreover, as a separate corporate entity, the Clinic is insulated from the GMC's liabilities. *See, cf., In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47 (1987).[8]

In addition, the Clinic employs its own staff of physicians and, other than the fact that it shares a parent corporation with the GMC, the Clinic appears to operate independently of the GMC. After a careful review of the record and the parties' briefs, we do not find appellees' arguments so compelling that we would allow the Clinic to reap the benefits of incorporation while at the same time "pierce the corporate veil" and allow it to profit from the GMC's forgiving of Mrs. Kashner's bills.

Hence, we reverse the order of the trial court and remand for a new trial on damages limited to a determination of the reasonable value of the services provided to Mrs. Kashner.[9]

The order of the trial court is reversed. This case is remanded for proceedings consistent with this memorandum.

Jurisdiction relinquished.

DEL SOLE, J., files a concurring statement.

DEL SOLE, J., concurring.

I join the Majority Opinion authored by Judge Hoffman. I only wish to point out that where a tortfeasor makes a pre-

8. Although GMC and the Clinic allegedly share a common trust fund for the payment of judgments, if a judgment against the GMC were to exceed the amount in the trust fund, the plaintiff would only be able to collect against the assets of the GMC.

9. We point out that the only damages sought by appellants were for medical costs and pain and suffering. As the cost of medical services is considered irrelevant and inadmissible as evidence of pain and suffering, *see Greenwood v. Hildebrand*, 357 Pa.Super. 253, 262, 515 A.2d 963, 967 (1986) (citing *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983)), *appeal denied*, 515 Pa. 594, 528 A.2d 602 (1987), the new trial on damages will be limited to a determination of appellants' claim for medical costs.

judgment payment to reduce liability, the reduction occurs after the extent of the liability is determined. It is not used to limit that determination.