## Morris v. Lindsay

C.P. of Delaware County, no. 91-10523.

*Lindley M. Cowperthwait,* for plaintiffs.
*Brendan P. Mailey,* for defendants.

McGOVERN, *J.,* January 13, 1995—Plaintiffs, Diana Morris and Michael Morris Jr., husband and wife, have appealed from the judgment entered following denial of their motion for post verdict relief.

This cause of action arises from an automobile accident which occurred July 8, 1989. Following a four

day trial, the jury returned a verdict in favor of plaintiffs, awarding Mrs. Morris $65,000 and her husband $2,500 for loss of consortium. Motions for post verdict relief were filed and denied. Plaintiffs raise five issues in their appeal. Those issues will be considered seriatim.

## COLLATERAL SOURCE

Plaintiffs contend that the trial court erred when it allowed into evidence testimony concerning severance pay and medical benefits which the wife-plaintiff received from her former employer. Plaintiffs argue that such should be excluded because it is evidence of a "collateral source" which created an impermissible inference in the minds of the jury that the wife-plaintiff had been compensated for her injuries and loss.

The fact that an injured party has received compensation from a source other than the wrongdoer is irrelevant in this Commonwealth in a lawsuit brought by the injured party against the alleged tortfeasor. *Kashner v. Geisinger Clinic,* 432 Pa. Super. 361, 638 A.2d 980 (1994). It is also clear, however, that not every mention of a collateral source constitutes error warranting a new trial. This is particularly so when the evidence is relevant to an issue unrelated to that of damages. *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corporation,* 504 Pa. 618, 476 A.2d 350 (1984).

The record sub judice reflects that testimony regarding severance pay and medical benefits occurred during the cross-examination of Warren Myers, the wife-plaintiff's former employer. Defense counsel had been inquiring into the circumstances of plaintiff's leaving that employment and the witness volunteered the information concerning benefits and severance pay. (12/1/92 N.T. 79-82.) The record will reflect that defense counsel

did not ask questions regarding those matters, nor did defense counsel ask questions so as to elicit such testimony. There was no follow up to the simple statement concerning medical benefits and severance pay nor was there any further elaboration of those areas. Further, the plaintiff failed to move to strike this evidence or to request cautionary instructions at that point.

Therefore, this testimony which may at best infer the existence of a collateral source but certainly not payment therefrom and which arose in unsolicited testimony by a plaintiff's witness without any motion to strike should not serve as a basis for a new trial nor is there any evidence of prejudice arising therefrom. This was an isolated reference made during a four-day trial, and any inappropriate inference the jury might have drawn therefrom was clearly outweighed by the court's closing instructions to the jury which accurately and thoroughly explained the law as it pertained to damages and defined the proper matters to be considered by the jury in calculating an award of damages. (12/3/92 N.T. 37-46.) This isolated reference to a potential collateral source was not prejudicial when considered in the circumstances of this case, nor, it is respectfully suggested, does it warrant the grant of a new trial.

## TESTIMONY AS TO HOSPITAL BILLS

Plaintiffs contend that the trial court erred in sustaining objections to the husband-plaintiff's attempts to testify concerning certain hospital bills. The record reflects that the document from which the husband-plaintiff was asked to testify was in fact not a hospital bill but rather a medical insurance notice of payment statement. (11/30/92 N.T. 204.) The witness, the husband-plaintiff, had not paid the bills reflected on this statement nor could he state in any other way from

his personal knowledge that those expenses had, in fact, been paid. The witness, husband-plaintiff, had not prepared the document in question. The document in question merely summarized various expenses and the witness had not even reviewed the documents which were allegedly the source of information contained upon the insurance statement. The husband-plaintiff witness, therefore, had no independent basis upon which to verify the information concerning this bill. Consequently, he was not a competent witness to testify as to those payments. The defendant's objections to these questions were properly sustained and it is respectfully suggested such does not present a basis for relief.

## EXHIBIT "P-5" WAS NOT SENT TO THE JURY

Plaintiffs now contend that the trial court erred when it refused to permit plaintiffs' exhibit "P-5" to go to the jury during deliberations. Exhibit "P-5" is a 20-page document prepared by plaintiffs' attorney and entitled "Recap of Plaintiff's Publishable Medical & Special Damages." The document contains suggestions that its computations are in accord with the Pennsylvania Motor Vehicle Insurance Act and contains a summary of dates and alleged treatment, descriptions of plaintiff's various employment situations, statements concerning termination of the wife-plaintiff and the reasons therefor, together with projected medical expenses and reasons therefor.

The determination of what exhibits should go to the jury during its deliberations is a matter left solely within the discretion of the trial judge. *Wagner by Wagner v. York Hospital,* 415 Pa. Super. 1, 608 A.2d 496 (1992); *Milan v. PennDOT,* 153 Pa. Commw. 276, 620 A.2d 721 (1993). Exhibit "P-5" as observed, contains sum-

maries, calculations, recapitulations and various observations concerning the wife-plaintiff's alleged medical and other special damages, including wage loss, projected loss of earning capacity and future medical expenses, among other things. There was extensive testimony presented by various witnesses concerning many of the areas "summarized" in exhibit "P-5." The trial court concluded that to send this exhibit to the jury, without explanation and cautionary instructions, would create the danger that the jury might emphasize unfairly the significance of this written document over the testimony, and might assume there is no longer any issue as to credibility. The jury had been instructed, of course, to exercise their collective recollection of all of the evidence introduced at trial and counsel had been free to use exhibit "P-5" as he chose during the trial and his summation. Further, the nature of the title, the face sheet and the language used in this document could very well be prejudicial to the defendant who did not have the opportunity to submit a similar document. Further, to present a single document suggesting that it contained a recapitulation of "publishable medical and special damages in accord with the Pennsylvania Motor Vehicle Insurance Act ..." might very well suggest to the jury that there was no longer any dispute to the many items contained in this 20-page document.

It is respectfully suggested that under the circumstances of this case, the court properly exercised its discretion in refusing to allow exhibit "P-5" to be sent to the jury during its deliberations. The jury was thus allowed to follow the court's instructions and consider all of the evidence they had heard and seen throughout the trial and to reach a verdict based thereon. That evidence, of course, included both the plaintiffs' and

the defendant's testimony concerning damages, together with cross-examination. Plaintiffs' contention in this regard is without merit and ought not be a basis for relief.

## JURY INSTRUCTIONS

Plaintiffs argue that the court's instructions were inadequate in that the jury was instructed to reduce any award to the wife-plaintiff by $15,000 to reflect first-party insurance benefits, and secondly, that the jury was not instructed using language from plaintiffs' proposed points for charge nos. 11 and 19.

The court, pursuant to the law of the Commonwealth, is obliged to view the charge as a whole, not in isolated portions, and then to determine whether or not there was prejudicial error. *Ellwood City Forge Corporation v. Fort Worth Heat Treating Company Inc.,* 431 Pa. Super. 240, 636 A.2d 219 (1994).

The court instructed this jury that if an award was made to the wife-plaintiff representing loss of earnings, they should subtract $15,000. This instruction was consistent in all respects with the Standard Jury Instruction 6.02 (Civ.) published by the Pennsylvania Bar Institute, last revised July 1991. Counsel for both parties and the court reviewed and agreed upon the instruction given, and the general effect of the charge given suggested that the reduction was required by the Motor Vehicle Financial Responsibility Law. (12/3/92 N.T. 41.) Thus, plaintiffs received the instruction to which they had agreed without the prejudicial impact of the court indicating that the wife-plaintiff had received $10,000 for her medical expenses. There is no argument here that the actual figures would make any impact since the plaintiffs' claims for lost earn-

ings and medical expenses were each well in excess of $15,000.[1]

Plaintiffs' counsel's argument at sidebar seems to indicate that he was objecting principally to the statement that the $15,000 was to be deducted from loss of earnings and earning capacity, as opposed to having stated that the $15,000 would be deducted from all of the special damages, since plaintiff's claims for medical expenses exceeded $100,000 and plaintiff's claimed loss of earnings and future wage loss was approximately $96,000. The court's instructions in this regard could have made no impact whatsoever upon this jury's verdict. The verdict was returned in a single lump sum, so whether $5,000 was taken from the lost earnings category and $10,000 from the medical expenses category, or $15,000 from the lost earnings category, such would make no impact upon the verdict returned by the jury. Indeed, this jury, in light of the $65,000 verdict, could very well have concluded that plaintiff lost no wages and that would inappropriately inure to the plaintiff's benefit under the circumstances of this case. There is, in any event, clearly no prejudice under the circumstances here to the plaintiffs. Since the plaintiffs received the instruction requested, and the instruction was legally correct, and since, in any event, there is no conceivable prejudice, the plaintiffs' contention in this regard should fail.

---

1. It is interesting to observe that plaintiffs here are apparently requesting that the jury be told that wife-plaintiff received medical benefits through her insurance policy, whereas plaintiffs' first objection raised on appeal opposes the infusion of that information under the so-called "collateral source" doctrine, thus objecting to any reference to insurance payments.

Finally, plaintiffs contend that the trial court erred in failing to instruct this jury according to plaintiffs' proposed points for charge nos. 11 and 19. Plaintiffs' requested point for charge no. 11 proposed a definition of the "infliction of pain." Plaintiffs' point for charge no. 19 explained "loss of consortium." Plaintiffs concede that the trial judge covered both of these areas, but they argue such was not adequately accomplished. A fair review of the record leads to the conclusion that the court thoroughly explained both concepts included within the two points plaintiffs raise and in greater detail than suggested by the plaintiffs' proposed points. (12/3/92 N.T. 42-43 and 45-46.) Further, the language contained within plaintiffs' requested point no. 11 is, in the court's judgment, more appropriate to a closing argument than judicial instructions. Most of the language requested in plaintiffs' point no. 19 was, in fact, given. Therefore, plaintiffs' contention of error amounts to little more than a complaint that the court did not use the language proposed by plaintiffs in their request for charge.

The trial judge has wide latitude in the choice of language used in instructing a jury, and so long as it is adequately communicated what the law is and how it applies to the case at hand, it is sufficient. *Wilson v. Anderson,* 420 Pa. Super. 169, 616 A.2d 34 (1992). A trial judge is, therefore, free to reject a party's requested points for charge so long as the charge actually given completely and accurately communicates the relevant law. *Musnuff v. City of Philadelphia,* 163 Pa. Commw. 120, 639 A.2d 1322 (1994). It is respectfully suggested that the trial court's charge in the matter at bar fully and accurately sets forth the law as to

pain and suffering and as to loss of consortium. The trial judge's decision to use his own language rather than that proposed by plaintiffs was not error.

It was for all of the foregoing reasons that this court concluded that both law and justice required the denial of plaintiffs' post verdict motion for relief, and further respectfully suggests that such does not serve as a basis for appellate relief.