Christine Tiani et al., Petitioners v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 18, 1984, before Judges Craig, Palladino and Senior Judge Barbieri, sitting as a panel of three.

*Richard M. Clark,* for petitioners.

*Maura A. Johnston,* Deputy Attorney General, with her, *John Kane,* Associate Counsel, *Allen C. Warshaw,* Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, January 7, 1985:

Petitioners, the Tiani children, appeal from a final order of the Department of Public Welfare which terminated benefits under the Aid to Families with Dependent Children (AFDC) program. The Tianis claim that the department acted contrary to constitutional constraints, as well as to federal regulations, when it included the income of their resident stepfather in calculating the state eligibility for AFDC. Because we conclude that there has been no constitutional or statutory violation by the department, we affirm.

Our scope of review in these cases is limited to determining whether or not the order is supported by law and substantial evidence and that it does not violate constitutional rights. *Montgomery County Child Welfare Services v. Hull,* 51 Pa. Commonwealth Ct. 1, 413 A.2d 757 (1980).

After the birth of the Tiani children, their father's whereabouts being unknown, the mother remarried. Because the mother's present husband resides with her and the children, the state included the income of that stepfather in calculating the income base available for the children's support. Section 432.12(c) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §432.12.

Pennsylvania's requirement of stepparent income inclusion conforms to federal changes in section 402

(a)(31) of the Social Security Act, 42 U.S.C. §602 (a)(31) (1982). *Shaffer v. Department of Public Welfare,* 86 Pa. Commonwealth Ct. 588, 485 A.2d 896 (1985), *Kratzer v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 318, 481 A.2d 1380 (1984).

Petitioners contend that, despite the amendments to the Social Security Act, their position should prevail on the ground that federal regulations continue to provide that income from stepparents who are living with the children shall not be assumed to be available, citing 45 C.F.R. §233.90(a)(1) as authority.

The contention is incorrect for two reasons. First, in any conflict between a statute and a regulation purporting to implement the statute's provisions, the regulation must, of course, give way. Second, the language prohibiting the assumption of income availability from nonlegally responsible individuals in the household, although present in the 1980 edition of the Code of Federal Regulations, does not appear in the 1981 and subsequent editions of the C.F.R.[1]

---

[1] §233.90 Factors specific to AFDC.

(a) *State plan requirements.* A State plan under title IV-A of the Social Security Act shall provide that:

(1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, of (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this para-

Petitioners' other contention is that Pennsylvania's statute treats them "differently from other identically situated AFDC children solely because of the marital status of their mother," thereby violating "the right to privacy and equal protection provisions" of the federal and state constitutions. They cite *Griswold v. Connecticut*, 381 U.S. 479 (1965) and *Zablocki v. Redhail*, 434 U.S. 374 (1978), in support of their position that "marriage is a privacy right protected by the zone of privacy created by fundamental constitutional guarantees."

*Griswold* and its three concurring opinions recognized a right of privacy in marriage. Four members of the majority adopted views expressed by Mr. Justice HARLAN in his dissent in *Poe v. Ullman*, 367 U.S. 497 (1961), to the effect that such right of privacy is different from the right of physical privacy which the fourth and fourteenth amendments were intended to protect. 367 U.S. at 551.

However, in *Califano v. Jobst*, 434 U.S. 47 (1977), a case where the agency terminated eligibility for social security benefits when the recipient married a

graph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State,

[nor may the State agency prorate or otherwise reduce the money amount for any need item included in the standard on the basis of assumed contributions from nonlegally responsible individuals living in the household. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions; and]

Our brackets indicate material which appeared in 1980 C.F.R. §233.90(a)(1), but was deleted in 1981 and subsequent editions of C.F.R.

non-eligible person, the Court said that the general rule that marriage may terminate benefits to a secondary beneficiary

> is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby. For the marriage rule cannot be criticized as merely an unthinking response to stereotyped generalizations about a traditionally disadvantaged group or as an attempt to interfere with the individual's freedom to make a decision as important as marriage. (Footnotes omitted.)

434 U.S. at 54. The Court noted that the class burdened by the rule in this situation included not only the person who decided to marry an ineligible person, thereby forfeiting benefits, but also included children, widowers, widows, divorced wives and parents.

Petitioners rely on *Zablocki v. Redhail,* where the Court rejected, as a direct and substantial infringement of the right to marry, a Wisconsin law forbidding any Wisconsin resident responsible for providing court-ordered child support from marrying without first obtaining court permission. However, the Court explicitly distinguished such a direct impediment to marriage from the *Califano* situation:

> The directness and substantiality of the interference with the freedom to marry distinguish the instant case from Califano v. Jobst, . . . The Social Security provisions placed no direct legal obstacle in the path of persons desiring to get married, . . . there was no evidence that the law significantly discouraged, let alone made "practically impossible," any marriages. . . .

434 U.S. at 387, n. 12.

By the same token, the amendments to the Pennsylvania statute, conforming to those of the federal statute, do not amount to an infringement of either a right to privacy or a right to marry.

Although the petitioners' brief contains a generalized mention of equal protection of laws, neither the required statement of questions in the brief nor the brief itself pursue that issue. Hence this court shall not do so.

Accordingly, we affirm.

### ORDER

Now, January 7, 1985, the order of the Department of Public Welfare in the above captioned matter, dated September 14, 1983, is affirmed.