560 A.2d 175

METROPOLITAN LIFE INSURANCE COMPANY, Appellee,

v.

Catherine BODGE, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 21, 1988.

Filed June 7, 1989.

See also, 352 Pa.Super. 191, 507 A.2d 837.

78

Catherine Miraglia–Lecky, King of Prussia, for appellant.

Robert F. Callahan, New York, for appellee.

Before CIRILLO, President Judge, and McEWEN and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from a summary judgment entered in favor of the appellee, the Metropolitan Life Insurance Company. As we must, we have examined the record before us in a light most favorable to the appellant, Catherine Bodge. Finding that there is no genuine issue of material fact and that Metropolitan is entitled to judgment as a matter of law, we affirm the order of the trial court.

Appellant's daughter, Catherine Theresa Bodge, ("Terri Bodge"), was involved in an automobile accident in 1980 which rendered her incompetent. On May 8, 1980, the Orphans' Court of Montgomery County entered a final decree appointing the appellant Guardian of the Person and the Estate of her daughter. At the time of the accident, Terri was an employee of the Krylon Division of Borden, Inc., and was an insured under a Group Health Insurance Policy issued by Metropolitan to Borden, Inc. Premiums for this health insurance were paid, in whole or in part, through deductions from Terri Bodge's salary.[1] At the time of the accident, Terri Bodge was also an insured under a No-fault automobile policy issued by Concord Mutual Insurance Company to the appellant.[2] Terri Bodge was an "insured" under the express terms of the Concord No-fault policy because she resided in her mother's home. The appellant submitted Terri Bodge's medical bills and related expenses to Metropolitan which paid in excess of $100,000.00 to health care providers. Appellant subsequently submitted the same medical bills to the Pennsylvania Assigned Claims Plan ("PACP"), which was processing claims against Concord following Concord's insolvency. In December of 1981, PACP issued a check in the amount of $105,892.44, representing payment for claims associated with Terri's medical

1. We are unable to determine, from the record before us, whether Borden, Inc., paid any portion of the Metropolitan health insurance premiums.

2. Appellant's No-fault automobile insurance policy was issued in compliance with the now repealed No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, § 203, 40 P.S. §§ 1009.101 *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1983.

care. The proceeds of this check have been placed in an escrow account pending the resolution of this litigation.

■ Metropolitan commenced this declaratory judgment action, claiming that it was entitled to recover the PACP monies because of a coordination of benefits provision contained in the group insurance policy issued to Borden, Inc. The trial court agreed, finding the coordination of benefits provision in Metropolitan's Group Health Insurance Policy to be valid and enforceable:

## COORDINATION OF BENEFITS UNDER THE GROUP POLICY WITH OTHER BENEFITS

(1) "Plan" means any plan providing benefits or services for or by reason of medical care or treatment, which benefits or services are provided by (i) any group, blanket, or franchise insurance plan, or other plan covering individuals or members as a group, (ii) any group hospital service prepayment plan, group medical service prepayment plan, group practice, or other group prepayment coverage, (iii) any coverage under Governmental programs, or any coverage required or provided by any statute, including any Motor Vehicle No fault Coverage required by statute.

\* \* \* \* \* \*

(3) If the Employee or a Dependent is covered by any other Plan of insurance or any other prepayment Plan, or is covered under any other type of benefit or service Plan, the benefits otherwise payable under the Group Policy as summarized in this certificate including the preceding paragraph are subject to reduction so that for Allowable Expenses incurred in any Claim Determination Period the benefits payable thereunder together with the benefits available under such other Plan of Plans will not exceed the total amount of such Allowable Expenses.

\* \* \* \* \* \*

(8) If any overpayment is made under the Group Policy because of failure to report other coverage or otherwise,

the Insurance Company shall have the right to recover such overpayment....

R.R. at 88a. Appellant contends that the trial court erred in finding this coordination of benefits clause enforceable for a number of reasons. First, appellant argues that Section 111(a)(4) of the No-fault Act renders the provision invalid:

(4) In no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this Act, have any right of subrogation with respect to said benefits.

40 P.S. § 1009.111(a)(4). We find that the eminent President Judge William W. Vogel correctly construed the meaning and import of Section 111(a)(4):

In Section 111(a), the legislature prohibited subrogation by no-fault insurers, subject to certain limited exceptions, as a necessary piece of the overall no-fault insurance package. Section 111(a)(4), which applies to "any entity providing benefits," extended this prohibition of subrogation rights under the former fault-based system to other providers of accident and health benefits.

When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of preserving its spirit. 1 Pa.C.S.A. § 1921(b). Words and phrases in a statute are to be construed according to their plain and common usage. *Old [sic] Fellows Home of Pennsylvania v. Commonwealth Department of Public Welfare,* 56 Pa.Commonwealth Ct. 115 [424 A.2d 961] (1981).

Subrogation commonly refers to the right of an insurer to step into the shoes of a party whom they have rightfully compensated and sue any party which the compensated party could have sued. In a fault-based insurance system, subrogation is necessary to ensure the party at fault bears the cost of his negligence.

However, in this instance, the right to reimbursement that Metropolitan seeks to enforce refers only to the right to recover directly from its promisee any monies *over-*

*paid* under the Health Policy "for failure to report other coverage or *otherwise* " (Emphasis added). Metropolitan, which is not a no-fault carrier, does not seek to recover by stepping into the shoes of its insured nor by determining the ultimate question of fault, but rather by merely enforcing an agreement it has with its insured. Therefore, we determine the right to reimbursement that Metropolitan seeks to have determined in this action to be wholly different than the right to subrogation prohibited by Section 111(a)(4). Accordingly, we determine [that] Section 111(a)(4) does not render the reimbursement provision of the Health Policy unenforceable in this instance.

Op. of Trial Court, January 31, 1985, at 11–13 (footnotes omitted).

■ The trial court was also correct in its construction of 31 Pa.Code § 89.97(c).[3] The court, quite correctly, noted that no provision of the No-fault Act, or its accompanying regulations, expressly prohibits the coordination of benefits between a group health insurance policy and an individual No-fault automobile policy. *Id.* at 15. Moreover, as the trial court recognized, the existence of 31 Pa.Code § 89.-97(c), although applying specifically to coordination of benefits between group policies, at the least evinces no general disfavor for coordination of benefits clauses on the part of the Insurance Commissioner.[4]

**3.** Section 89.97(c) of the Pennsylvania Code provides:
(c) *Coordination with other plans.* Nonduplication or coordination of benefits provisions for group medical expense insurance coverages may provide for nonduplication or coordination with any plan or State or Federal program providing benefits or services for or by reason of medical or dental care and treatment which benefits or services are provided by group insurance or any other arrangement of coverage of persons in a group whether on an insured or uninsured basis. All policies with such provisions shall stipulate clearly how such provisions will be administered.
31 Pa.Code § 89.97(c).

**4.** In the present case, we do *not* hold that the Insurance Commissioner has sanctioned coordination of benefits between group policies and individual policies. It is quite clear from the language of 31 Pa.Code § 89.97(c) that this code section does not permit coordination of benefits between group and individual policies and, indeed, it does not involve individual insurance policies at all. The most that can be said

 We find that the coordination of benefits clause included in Terri Bodge's Group Health Insurance Policy is a clause which the law will recognize and enforce. This clause is a prominent part of the group health insurance policy, highlighted with the following underlined and capitalized title: *"COORDINATION OF BENEFITS UNDER THE GROUP POLICY WITH OTHER BENEFITS."* The clause sets forth the details of the coordination of benefits provision in clear terms and there is no question that, pursuant to those express terms, Metropolitan is entitled to recover the monies paid by the PACP. Our holding in this case is not in conflict with previous decisions by this Court in which we have determined that where an individual has private collateral benefits in addition to coverage under the No-fault Act, the No-fault Act does not prevent that individual from realizing a double recovery. *See Brower v. Nationwide Mutual Insurance Company,* 361 Pa.Super. 385, 522 A.2d 635 (1987), *alloc. denied,* 518 Pa. 634, 542 A.2d 1364 (1988); *Steppling v. Pennsylvania Manufacturers' Association Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984). These cases involved the interpretation and application of Section 203(a) of the No-fault Act:

§ 1009.203. Collateral benefits.

(a) If benefits other than no-fault benefits are provided to an individual through a program, group, contract or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a victim or the survivor of a deceased victim injured as a result of an accident in the absence of no-fault benefits, then any reduction or savings in the direct or indirect cost to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit.

40 P.S. § 1009.203(a). Although Section 203(a) does not prevent a double recovery, it also does not *mandate* double recovery as a general rule. Section 203(a) was enacted for

of 31 Pa.Code § 89.97(c), with respect to the instant case, is that it evinces no disfavor for coordination of benefits clauses *in general* on the part of the Insurance Commissioner. The trial court so held.

a specific purpose: to prevent a person who has paid premiums on behalf of another from having a viable claim to direct or indirect cost savings which may result from the existence of No-fault benefits. Indeed, in the present case, if Borden Inc., paid a portion of Terri Bodge's health insurance premiums and realized a cost savings from the existence of No-fault benefits, then these cost savings must be returned to Terri Bodge or used for her benefit. In any event, whether Borden Inc., complied with Section 203(a), assuming it is applicable, is not an issue presently before us. Terri Bodge's "Section 203(a)" claim is merely a claim which appellant may be able to pursue on behalf of her daughter in the future.

Having determined that the coordination of benefits provision in Metropolitan's Group Health Insurance policy is enforceable as a matter of law, and given the undisputed facts of record, we affirm the entry of summary judgment in favor of Metropolitan. We recognize that the appellant has raised several other claims of trial court error, however, all of these claims are meritless. Appellant's claims with reference to Pa.R.C.P. 2054 are waived for the purposes of appeal as they were not presented to the trial court. Appellant has argued that because she and her No-fault insurance carrier were not parties to the health insurance policy issued by Metropolitan, the coordination of benefits provision does not apply to the monies paid by reason of the No-fault insurance policy. The simple answer to this contention is that monies paid by virtue of the Concord insurance policy were not in response to a claim filed by the appellant individually, but were monies paid because of a claim filed on behalf of Terri Bodge, an insured under the Concord policy. The trial court correctly noted the following:

The Court takes notice of the December 3, 1980 proof of claim form attached as part of Exhibit 1 to Mrs. Bodge's Complaint of March 30, 1983 in the case of *Bodge v. Pennsylvania Assigned Claims Plan*, No. 83–04649. The proof of claim form, forwarded to the Commonwealth of Pennsylvania Insurance Department, Liquidation Divi-

sion under the heading "Concord Mutual Insurance Company (Dissolved)," indicates the named insured is "Catherine Bodge" and the claimant is "Catherine Theresa Bodge (Daughter)." The following appears on the line for the claimant's signature: "Catherine Bodge, Guardian for Catherine T. Bodge (Claimant)." This is consistent with our conclusion that the claim against Concord and PACP is one of Terri's estate.

Op. of Trial Court, January 31, 1985, at 22 n. 11.

■ Additionally, appellant argues that the trial court erred in awarding the specific sum of $105,102.91 to Metropolitan. The exhibits admitted at trial and the testimony of the parties clearly supports the trial court's determination that Metropolitan paid, and now may recover, a total sum of $105,102.91 for Terri Bodge's health care. The fact that Metropolitan may have paid some health care providers after it was aware of other potential insurance coverage is not relevant. Metropolitan had a contractual obligation to pay claims made by Terri Bodge and, in the event that other insurance did cover the same costs, Metropolitan had a contractual right to recover any overpayments it had made on behalf of Terri Bodge. Finally, appellant's contention that the trial court erred in not admitting a "Joint Stipulation of Facts" prepared on behalf of the appellant must fail. The stipulation was neither agreed to nor signed by Metropolitan.

Order affirmed.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

The regret I feel upon departing the insightful analysis of the author of the majority is somewhat relieved by the lyrical admonition of the venerable President Judge William F. Cercone, upon his completion of a similar voyage of legislative interpretation:

[t]hose who embark "on the high seas of Pennsylvania's No-fault Motor Vehicle Insurance Act not do so without a

good compass, a knowledge of reefs and storms and plenty of food and water. Any attempt to choose an alternative route by land in an effort to unlock the secrets of the Act will encounter mazes of paths, pitfalls, underbrush and dead ends."

*Heffner v. Allstate Insurance Company*, 265 Pa.Super. 181, 184, 401 A.2d 1160, 1161 (1979), *aff'd.*, 491 Pa. 447, 421 A.2d 629 (1980).

It is thus wary that I, most respectfully, dissent from the conclusions of the majority that (1) coordination of benefits by group policies with individual policies has been sanctioned by the Insurance Commissioner; (2) that Section 203 of the No-fault Act was enacted for the specific purpose of preventing "a person who has paid premiums on behalf of another from having a viable claim to direct or indirect cost savings which may result from the existence of No-fault benefits"; and (3) that Section 203(a) of the No-fault Act does not require compliance with its two express preconditions in order to permit coordination of benefits between group and individual policies, but rather merely creates a "claim" for the difference in premium costs.

Appellant initially argues that the trial court erred when it concluded that Section 111(a)(4) of the No-fault Act did not preclude Metropolitan from asserting its claim for reimbursement against the fund created by the payment by PACP of first party benefits for medical bills incurred by Terri Bodge. Section 111(a)(4) of the Act provided:

(4) In no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this Act, have any right of subrogation with respect to said benefits.

40 P.S. § 1009.111(a)(4).

The eminent President Judge William W. Vogel interpreted this section to provide that where an entity such as Metropolitan (i.e., an insurance carrier other than a no-fault carrier) provides benefits to a victim, that insurer does not have any right of subrogation *against the tortfeasor* who caused the injuries to the victim, for benefits paid by the

carrier to its insured. I believe this to be the correct interpretation although Section 111(a)(4) is susceptible of a different interpretation, as evidenced by the opinion of the Third Circuit Court of Appeals in *Heusle v. National Mutual Insurance Company,* 628 F.2d 833 (3rd Cir.1980), in which the court construed Section 111(a)(4) as barring "providers of health and accident insurance from seeking subrogation *against the no-fault carrier." Id.* at 839 (footnote omitted) (emphasis supplied). The Third Circuit construed the words "said benefits" as referring to no-fault benefits, while the trial court in the instant case construed the words "said benefits" as referring to the benefits provided to the insured by the group health insurer.[1] Construing subsection (a)(4) within the context of Section 111 of the No-fault Act, I believe the legislature intended, in subsection (a)(4), to preclude any insurer, who provides health and accident benefits to an accident victim, from seeking subrogation against the tortfeasor who caused the injuries. I, therefore, agree with the conclusion of the distinguished trial court that Section 111(a)(4) does not preclude recovery by Metropolitan in this action.

Appellant also argues that the trial court erred in concluding that the coordination of benefits provision contained in the policy of insurance issued by Metropolitan was not in violation of the regulations issued by the Insurance Commissioner. Appellant argues that a group policy may not provide for coordination of benefits with an individual policy, citing 31 Pa.Code § 89.97(c). This section of the Pennsylvania Code provides:

> (c) *Coordination with other plans.* Nonduplication or coordination of benefits provisions for group medical expense insurance coverages *may provide for* nonduplication or *coordination with any plan* or State or Federal program providing benefits or services for or by reason of medical or dental care and treatment *which benefits or*

---

1. This section has also been interpreted by the authors of the "The Pennsylvania No-fault Motor Vehicle Insurance Act", D. Shrager, ed. (1979), as barring a "right of subrogation against no fault benefits." *Id.* at p. 148.

*services are provided by group insurance or any other arrangement of coverage of persons in a group* whether on an insured or uninsured basis. All policies with such provisions shall stipulate clearly how such provisions will be administered.

31 Pa.Code § 89.97(c) (emphasis supplied).

The trial court found that this section of the Pennsylvania Code evidences a public policy in favor of coordination of benefits clauses, and noted that there was no express prohibition against coordination of benefits by a group policy with an individual policy. The trial court concluded that since "[n]either party contends the Health Policy was not formally and properly approved by the Insurance Commissioner",[2] there was "no obstacle in the Pennsylvania Code to inclusion [of the coordination of benefits provision] in a group health policy." The majority concludes that 31 Pa.Code § 89.97(c), "although applying specifically to coordination of benefits between group policies, at least evinces no general disfavor for coordination of benefit clauses on the part of the Insurance Commissioner." I find myself in disagreement with both the trial court and my colleagues of the majority.

" 'An intrinsic aid to statutory construction is found in the maxim *expressio unius est exclusio alterius.* The maxim establishes the inference that, where certain things are designated in a statute, "all omissions should be understood as exclusions." The maxim is one of long standing application, and it is essentially an application of common sense and logic.' " *Commonwealth v. Charles,* 270 Pa.Super. 280, 287, 411 A.2d 527, 530 (1979), *quoting Puller v.*

---

**2.** There is no evidence in the record, of any nature whatsoever, that the endorsement which provided for the coordination of benefits with individual policies of automobile insurance was submitted to or approved by the Insurance Commissioner. Evidence of approval by the Commissioner would not, however, be dispositive of the issue presented by this appeal since regulations or approvals issued by the Insurance Commissioner must be in accordance with the statute under which they are promulgated. *Commonwealth, Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 80, 422 A.2d 480, 482 (1980); *Tiani v. Commonwealth, Department of Public Welfare,* 86 Pa.Cmwlth. 640, 641, 486 A.2d 1016, 1017 (1985).

*Municipality of Anchorage,* 574 P.2d 1285, 1287 (Alaska 1978) (footnotes omitted). *Accord: Pane v. Commonwealth, Department of Highways,* 422 Pa. 489, 493, 222 A.2d 913, 915 (1966); *Cali v. City of Philadelphia,* 406 Pa. 290, 305, 177 A.2d 824, 832 (1962); *Samilo v. Commissioner, Insurance Department,* 98 Pa.Cmwlth. 232, 233, 510 A.2d 412, 413 (1986); *Latella v. Commonwealth, Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 29, 459 A.2d 464, 473 (1983). The Insurance Commissioner has, in 31 Pa.Code § 89.97(c), provided for the coordination of benefits only between *group* policies. If the coordination of benefits with both group and individual policies had been contemplated by the Insurance Commissioner in promulgating this section, that portion of the regulation referring to "any plan or State or Federal program providing benefits or services for or by reason of medical or dental care and treatment which benefits or services are provided by group insurance or any other arrangement of coverage of persons in a group," was mere surplusage. The Statutory Construction Act, which is applicable to the Pennsylvania Code, *see* 1 Pa.C.S. § 1502(a)(1), requires that every statute or regulation "be construed, if possible, to give effect to *all* its provisions." 1 Pa.C.S. § 1921(a) (emphasis supplied). In order to accept the argument that 31 Pa.Code § 89.97(c) permits coordination of benefits between group and individual policies, all of the provisions describing group policies would have to be treated as mere surplasage. Such a result would violate well-established principles of statutory construction as well as Section 1921(a) of the Statutory Construction Act. I conclude, therefore, that 31 Pa.Code § 89.97(c) does not authorize group policies to provide for the coordination of benefits with individual policies of insurance.

I would find, however, that the legislature provided, in the No-fault Act itself, for the coordination of benefits between group health insurance policies and individual policies of automobile insurance *in certain limited circumstances.* Section 203(a) of the No-fault Act provided:

§ 1009.203. Collateral benefits

(a) If benefits other than no-fault benefits are provided to an individual through a program, group, contract or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a victim or the survivor of a deceased victim injured as a result of an accident in the absence of no-fault benefits, then any reduction or savings in the direct or indirect cost to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit.

40 P.S. § 1009.203(a).

This section provided statutory authorization for a coordination of benefits provision such as the one at issue, where (1) the insurance was paid for in whole or in part by someone other than the insured and (2) any savings resulting from the coordination of benefits provision in the group policy were returned to the *individual employee* or utilized for the benefit of the *individual employee*.

Our distinguished colleague Judge Justin M. Johnson, in *Brower v. Nationwide Mutual Insurance Company*, 361 Pa.Super. 385, 522 A.2d 635 (1987) *allo. denied*, 518 Pa. 634, 542 A.2d 1364 (1988), analyzed, although in a different context, Section 203(a) of the No-fault Act and stated:

We read Section 203(a) as a legislative command that a provider of health insurance benefits *may not realize a savings in the costs* associated with providing a group contract, if those cost savings result from the existence of no-fault insurance benefits, *without either* passing on those savings in costs to the consumer or enhancing the program of benefits available at the same premium price.

*Id.*, 361 Pa.Superior Ct. at 389, 522 A.2d at 637 (emphasis supplied). The appellant in *Brower* was seeking to recover from the no-fault insurance carrier the difference between the full amount of her hospital bills and the amount which those providers had accepted from Blue Cross/Blue Shield in full satisfaction of their claims. This Court held that the appellant was entitled only to the amount which the providers had accepted in full satisfaction of the claims and not

the face amount of the bills. The Blue Cross/Blue Shield policy in *Brower* evidently did not contain a coordination of benefits clause since the Court noted that:

> We do not know the premium cost which Brower, or someone on her behalf, has paid for her BC/BS coverage. However, we can conclude from the record before us that that cost, whatever it might have been, *was not reduced as a direct result of the existence of no-fault benefits.* We assume that some direct relationship exists between the premium paid for group benefits and the total amounts which the group insurer expends to satisfy claims under any given plan. Brower's receipt of collateral benefits under the tortfeasor's motor vehicle insurance policy in no way determined or affected the BC/BS payments made to the Nason Hospital. All the payments made by BC/BS were determined strictly on the basis of the charges appearing on the hospital bill and the reduced payment agreement between the hospital and BC/BS. The mere fact that double recovery without setoff is permitted, or required, under *Steppling [v. Pennsylvania Manufacturers' Association Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984)]*, suggests that the likelihood of a possible reduction or savings in the direct or indirect costs to Brower of her BC/BS package is non-existent.

*Id.,* 361 Pa.Superior Ct. at 389–390, 522 A.2d at 637–638 (emphasis supplied).

This Court, in *Steppling v. Pennsylvania Manufacturers' Association Insurance Co., supra,* in concluding that the appellant could recover from his No-fault carrier the amount of his medical expenses already paid by Blue Cross and Blue Shield, noted that such a conclusion was:

> consistent with the analysis of private collateral benefits found in the treatise on the No-fault Act published by the Pennsylvania Trial Lawyers Association. D. Shrager, ed., *The Pennsylvania No-fault Motor Vehicle Insurance Act* (1979). In that work, the editor states, at page 148:
>> the 'benefits other than no-fault benefits' referred to in Section 203(a) clearly envisions medical and hospital-

ization plans paid for in whole or in part by the victim's employer. *The section does not prevent the victim from realizing a double recovery.* It simply requires that any savings which result from an offset provision in any medical or hospitalization plan must be passed on to the individual employee. (emphasis in original).

*Steppling v. Pennsylvania Manufacturers' Association Insurance Co., supra,* 328 Pa.Superior Ct. at 428, 477 A.2d at 519. *See also: Allstate Insurance Company v. Heffner,* 491 Pa. 447, 459, 421 A.2d 629, 636 (1980) ("[S]ection 203 of the Act concerning Collateral Benefits permits victims to recover their medical expenses from Blue Cross and Blue Shield and then recover the same expenses a second time from the no-fault carrier."); *Hauck v. Ohio Casualty Group of Insurance Companies,* 361 Pa.Super. 370, 372, 522 A.2d 628, 629 (1987), *allo. denied,* 516 Pa. 641, 533 A.2d 712 (1987) ("A victim may twice recover the charges incurred for medical care, when, as here, the victim may have BC/BS or other similar coverage which is available to pay the same charges for which the no-fault insurer is liable."). The Court in *Steppling* noted that such a " 'double recovery is allowed because the insured has paid two premiums and is entitled to the benefits purchased under each policy.' " *Steppling v. Pennsylvania Manufacturer's Insurance Co, supra* 328 Pa.Super. at 429, 477 A.2d at 520, *quoting Killeen v. Travelers Insurance Company,* 721 F.2d 87, 89 (3rd Cir.1983). *See also: Hauck v. Ohio Casualty Group of Insurance Companies, supra* 361 Pa.Super. at 376, 522 A.2d at 631) ("Although double recovery allows a victim to receive compensation in excess of actual damages, this phenomenon exists because insurance law dictates that someone who has paid two separate premiums for separate policies covering the same potential liability is entitled to recover under each policy.")

Contrary to the majority, I read Section 203 of the No-fault Act as permitting coordination of benefits between group health policies and individual policies of no-fault insurance only where *two* pre-conditions have been met: (1)

that the employer pay all or part of the premium for the group policy and (2) that the savings realized by the employer as a result of the inclusion of the coordination of benefits clause be passed on to the insured either by means of reduced premiums or through increased benefits at the same cost. There is no evidence of record that either of these *two* pre-conditions have been met. In the absence of such evidence, Metropolitan was clearly not entitled to summary judgment.

The only evidence of record in the instant case concerning the payment of the cost of the premiums for the Metropolitan policy is the averment contained in paragraph 23 of the answer with new matter filed by appellant: [3]

Catherine Theresa Bodge, Defendant's daughter, had deducted from her wages sums to cover the pro rata share of the premiums paid by Borden, Inc., to plaintiff for the Group Health Insurance Policy issued by Plaintiff to Borden, Inc.

Metropolitan, in its motion for summary judgment, averred that it was entitled to summary judgment solely on the basis that "the Metropolitan Life policy contains a coordination of benefits provision which excludes from coverage payments made by any other plan of insurance." Nowhere in the pleadings did Metropolitan aver that the Metropolitan policy had been paid for in whole or in part "by some other person", i.e., Borden, Inc., *and* that *in exchange* for the inclusion of the provision providing for the coordination of benefits payable under the policy with any benefits payable under an individual policy of no-fault automobile insurance, Metropolitan had reduced the cost charged to Terri Bodge or had provided enchanced benefits for Terri Bodge without any increase in the premium charged to her.

It is well settled that summary judgment may not be entered unless the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact

---

**3.** The record does not contain any reply by appellee to the new matter contained in appellant's answer.

and that the moving party is entitled to judgment as a matter of law. *Curry v. Estate of Thompson,* 332 Pa.Super. 364, 366, 481 A.2d 658, 659 (1984). "On review, the record must be examined in a light most favorable to the non-moving party, and in doing so all well-pleaded facts in the non-moving party's pleadings are accepted as true and that party is given the benefit of all reasonable inferences to be drawn therefrom." *Neil v. Allstate Insurance Co.,* 379 Pa.Super. 299, 301, 549 A.2d 1304, 1305 (1988) *citing Spain v. Vicente,* 315 Pa.Super. 135, 139, 461 A.2d 833, 835 (1983).

Metropolitan has not established that it is entitled to judgment as a matter of law since it offered no evidence to establish (1) that Borden, Inc. had paid, "in whole or in part," the premiums for the policy issued by Metropolitan, or (2) that Metropolitan had complied with the requirements of Section 203(a) of the No-fault Act as a condition precedent to the inclusion of the coordination of benefits provision applicable to individual policies of no-fault automobile insurance. I would, therefore, reverse the order of summary judgment in favor of Metropolitan.