**PENN CENTRAL NATIONAL BANK, Guardian of the Estate of Barry Meshyock, and Lillian Meshyock, Guardian of the person of Barry Meshyock, an incompetent, Plaintiffs,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 86–2694.

United States District Court,
W.D. Pennsylvania.

Oct. 10, 1990.

Frank Salpietro, Pittsburgh, Pa., for plaintiffs.

David B. Fawcett, III, Pittsburgh, Pa., for defendant.

MEMORANDUM

STANDISH, District Judge.

This is a civil action for breach of contract in which plaintiffs Penn Central National Bank (Penn Central), Guardian of the Estate of Barry Meshyock and Lillian Meshyock, Guardian of the person of Barry Meshyock, seek damages from defendant

Connecticut General Life Insurance Company (Connecticut General) for money allegedly owed to plaintiffs under a Group Medical Expense Insurance Policy (Group Policy). Presently before the court is defendant's motion for summary judgment. After consideration of the motions and the memoranda filed in support thereof, the affidavits and other evidentiary materials, the arguments heard on May 10, 1990 and the subsequently filed supplemental briefs, defendant's motion shall be granted for the reasons that follow.

Defendant Connecticut General contends that the General Limitation provision contained in section 12 of its Group Policy excluding coverage for expenses reimbursable under a no-fault policy is valid. Connecticut General has moved for summary judgment, arguing that because section 12 is valid, it properly refused to pay plaintiffs costs that had already been reimbursed by Ms. Meshyock's no-fault policy. In opposition to defendant's motion for summary judgment, plaintiffs assert that the General Limitation clause is contrary to the law of both the Commonwealth of Pennsylvania and the state of Michigan.

The issue to be resolved then is twofold. The threshold question that must be answered is a conflicts of law question: whether, under Pennsylvania choice-of-law rules, Michigan or Pennsylvania law applies. And the second issue is whether, under the relevant state law, the General Limitation clause in defendant Connecticut General's insurance policy excluding coverage for expenses reimbursable under a no-fault policy is valid.

### Factual Background

The relevant undisputed facts are set forth below:

1. On August 13, 1982, Barry Meshyock suffered severe injuries from an auto accident that occurred in Huntingdon County, Pennsylvania.

2. At the time of the accident, Barry Meshyock was covered under his parents' no-fault policy provided by State Farm Insurance Company. The State Farm policy has covered most, if not all, of Mr. Meshyock's medical expenses.

3. At the time of the accident, Lillian Meshyock, mother and guardian of Barry Meshyock, was employed in Pennsylvania by the Elco Corporation (ELCO). ELCO is a Pennsylvania corporation that is a division of Gulf & Western Manufacturing Company, a Delaware corporation headquartered in Michigan. The ELCO Connector Division (ELCO Connector) in Huntingdon, Pennsylvania, where Ms. Meshyock worked, was ELCO's primary manufacturing division. By virtue of her employment with ELCO, Ms. Meshyock, as well as her dependents, were covered by a Group Policy issued by Connecticut General. It is this Group Policy that is the subject matter of the present dispute.

4. In 1982 ELCO Connector recognized Local 2099 of the International Brotherhood of Electrical Engineers (Local 2099) as the sole and exclusive bargaining agency for all of its hourly production and maintenance employees. All of Local 2099's members worked at the ELCO Connector plant in Pennsylvania.

5. In Huntingdon, Pennsylvania, ELCO and Local 2099 negotiated, executed, and, on August 3, 1982, entered into a Collective Bargaining Agreement, the subject matter of which pertained solely to the working conditions at the ELCO Connector plant in Huntingdon.

6. Under the terms of this agreement, ELCO agreed to change its group health insurance carrier to Connecticut General.

7. Connecticut General issued the Group Policy referred to in paragraph three to ELCO's parent corporation, Gulf & Western. The policy was issued and delivered in Michigan and was submitted to and approved by the Michigan State Insurance Commissioner.

8. Although Gulf & Western obtained the policy, it did so for the sole benefit of those employees who worked at the ELCO plant in Huntingdon, Pennsylvania. Section five of the policy, entitled "Eligibility for Insurance," provides that coverage under the policy extends to "[e]ach hourly Employee who is a member of a collective

bargaining unit represented by International Brotherhood of Electrical Workers Local 2099." It further states that any employee who is not a member of that unit is not eligible.

### Conflicts of Law Issue

In this civil action, where jurisdiction is based on diversity of citizenship, the district court must apply the choice-of-law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Complaint of Bankers Trust Co.,* 752 F.2d 874, 881 (3d Cir.1984); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1308 (3d Cir. 1978). The United States Court of Appeals for the Third Circuit has determined that the "flexible conflicts methodology" adopted by the Pennsylvania Supreme Court for tort actions in *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964) likely would be employed by that same court in contract actions when the occasion arises. *Melville,* 584 F.2d at 1311; *Bankers Trust,* 752 F.2d at 881. *See also McCabe v. Prudential Property and Casualty Insurance Co.,* 356 Pa.Super. 223, 514 A.2d 582, 585 (1986) (*Griffith's* interest analysis applies to contract action to determine coverage under automobile liability insurance policy).

Applying the law of the circuit, this court will resolve the conflicts of law issue presented by the instant contract dispute within the rubric of *Griffith,* a two-prong "contacts" and "interest" inquiry. This flexible methodology combines the approaches of the Restatement Second of Conflicts, which considers the contacts of the various concerned jurisdictions and an "interest analysis" which entails a qualitative appraisal of the relevant states' interests and policies with respect to the controversy. *Melville,* 584 F.2d at 1311. "Thus, under Pennsylvania choice-of-law principles, the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied." *Bankers Trust,* 752 F.2d at 882, citing *Griffith,* 203 A.2d at 805–806.

Plaintiffs contend that the court should apply Michigan law to this matter and rely on a case from the western district of Pennsylvania, *Home For Crippled Children v. Prudential Insurance Co.,* 590 F.Supp. 1490 (W.D.Pa.1984) to support their assertion. The *Home* case presented a choice-of-law question on facts similar to those presently before the court. In that case, Servico, Inc. obtained a group health insurance policy from Connecticut General Life Insurance Company for the benefit of its employees. As an employee of Servico, Ms. Sentner and her son Jason were covered under the group policy. Connecticut General refused to reimburse fully the Home for Crippled Children for expenses it had incurred in connection with treatment of Jason Sentner, asserting that Jason was not entitled to coverage under the policy because he suffered from a pre-existing condition which was explicitly exempted from coverage by the terms of the agreement.

Plaintiff argued that the provision exempting coverage was unenforceable. Defendant responded that it was valid under both Tennessee and Pennsylvania law. It was incumbent upon the court to determine which law applied.

The Home for Crippled Children was a Pennsylvania corporation. The patient, Jason, and the insured, Jason's mother, were Pennsylvania residents. The Servico facility where the insured worked was located in Pennsylvania, but its corporate headquarters was in Tennessee. The policy was issued and delivered to Servico in Memphis, Tennessee, was filed with and approved by the Tennessee Department of Insurance, and "cover[ed] employees of Servico facilities throughout the United States." *Home For Crippled Children,* 590 F.Supp. at 1501. The court determined that Tennessee law should apply.

In reaching this conclusion, Judge Mansmann relied upon a case from the middle district of Pennsylvania, *Henning v. Metropolitan Life Ins. Co.,* 546 F.Supp. 442 (M.D.Pa.1982). In *Henning,* General Electric (GE) had obtained a group insurance

policy from Metropolitan Life Insurance Company for its employees who worked at various GE plants all over the United States. The policy had been applied for, signed, issued and delivered in New York. The only contacts with Pennsylvania were plaintiff's residence and the location of the particular plant at which plaintiff worked.

The *Henning* court had determined that New York had the greatest interest in having the policy interpreted according to its own state laws. Judge Mansmann discussed the *Henning* court's rationale:

> The court reasoned that the significance of Pennsylvania's interest in protecting its resident-consumers from policy exclusions diminishes in the group policy context where the real insured is not the individual employee but rather the entity or group of employees. In that situation, the employer, as representative of the entity, acts as the agent of the insured.

*Crippled Children*, 590 F.Supp. at 1500, citing *Henning*, 546 F.Supp. at 446.

The Servico policy, just like the GE policy, was obtained for the benefit of employees from all over the United States who were employed at various locations throughout the country. Relying on the reasoning in *Henning*, the court in *Home For Crippled Children* concluded that where the only contact Pennsylvania had with the dispute was that it was the site of one of numerous plant facilities of the multistate employer, all of which were bound by the group policy, and the residence of one of many insureds living all over the country, Pennsylvania's interests were outweighed by those of Tennessee.

In *Home For Crippled Children* and *Henning*, the courts acknowledged that in a conflicts of law context the interest of the insured is generally recognized. *Home For Crippled Children*, 590 F.Supp. at 1501; *Henning*, 546 F.Supp. at 446–47. In both of these cases, however, the courts determined that the "real insured" of the group policy was an entity, or a group of

employees, that had offices throughout the United States. There was no single jurisdiction in which the insureds resided whose interest could be recognized. Because the law of no state of residence could apply to the interests of every insured, the court had no alternative except to apply the law of the state in which the insurer resided.

By contrast, the instant case presents a situation in which the group policy benefits only Pennsylvania residents. Although the insurance contract names Gulf & Western as the policyholder, and Gulf & Western is unquestionably a multistate employer, the contract applies only to the employees and dependants of the ELCO–Connector plant in Huntingdon, Pennsylvania. Section five of the Group Policy expressly provides that only those employees and their dependants who are members of local 2099 and who work at the Huntingdon plant are eligible for coverage. Moreover, the policy was obtained for the purpose of complying with the Collective Bargaining Agreement binding ELCO and local 2099, two Pennsylvania entities.

Plaintiffs maintain, nonetheless, that Michigan law should apply because the policy was issued to Gulf & Western in the state of Michigan. While Michigan has an interest in an insurance contract issued in its state, that interest is outweighed in this particular case where the real insured is not a group that straddles many state borders, but rather resides exclusively in Pennsylvania. All of the intended employee beneficiaries of this agreement are Pennsylvania residents, or, at least work in Pennsylvania.[1] The Commonwealth of Pennsylvania has a clearly identifiable and significant interest in prescribing the standards that will govern the insurance contracts of its consumer residents, and the mere fact that the policy was actually issued within the state of Michigan does not diminish that interest.

Balancing the concerns of the two states and the contacts each has to this particular contract, the court finds that Pennsylva-

---

1. Given the proximity of Huntingdon to the Pennsylvania border, it is unlikely that any ELCO employee resides outside of the state. Moreover, no one alleges that any insured employee resides outside of Pennsylvania.

nia's interest is great, that it outweighs Michigan's interest and concludes that Pennsylvania law will apply.

### Pennsylvania Insurance Law

■ In applying Pennsylvania law to the present dispute, the court finds that the General Limitation clause contained in section 12 of Connecticut General's insurance policy excluding coverage for expenses reimbursable under a no-fault policy is valid and enforceable.

Section 12 of the insurance policy provides that:

> No payment will be made under this policy for expenses incurred by an Employee or a Dependant to the extent that the Employee or Dependant is reimbursed, entitled to reimbursement, or in any way indemnified for those expenses by any personal injury protection benefits payable under the mandatory portion of any group or individual automobile insurance policy written under the "no-fault" insurance provisions of the law of any jurisdiction. For the purposes of this limitation, the term "mandatory portion" will mean the mandatory portion as adjusted by any variable option available under that portion which is actually elected by the individual.

Group Medical Expense Insurance Policy, Exhibit E, Exhibits in Support of Plaintiffs' Motion for Summary Judgment, filed October 6, 1987.

Plaintiffs maintain that because Lillian Meshyock elected to make her no-fault insurance policy primary she was entitled to receive benefits from both policies. They argue that the General Limitation clause is invalid because the policyholder's failure to return to Ms. Meshyock savings accumulated as a result of this restriction violated the No-fault Motor Vehicle Insurance Act, Section 1009.203, entitled "Collateral Benefits." 40 P.S. § 1009.203 (Repealed).[2]

Section 1009.203(a) provides:

> If benefits other than no-fault benefits are provided to an individual through a program, group, contract, or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a victim or the survivor of a deceased victim injured as the result of an accident in the absence of no-fault benefits, then any reduction or savings in the direct or indirect cost to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit.

Although section 12 appears in the Group Policy under the heading General Limitation and not Coordination of Benefits, both plaintiffs and defendant argue, by analogy, case law concerning coordination of benefits. Connecticut General Life Insurance relies on two cases from the Pennsylvania Superior Court which construe Section 203 of the no-fault insurance law.

In both *Metropolitan Life Insurance Company v. Bodge*, 385 Pa.Super. 77, 560 A.2d 175 (1989) and *Dutton v. Educators Mutual Life Insurance*, 381 Pa.Super. 522, 554 A.2d 124, *allocatur denied*, 522 Pa. 619, 563 A.2d 888 (1989), two different panels of the Superior Court reached the same conclusion: Section 203 of the No–Fault Motor Vehicle Insurance Act does not require the insurer of a group policy containing a coordination of benefits clause to pay benefits to an employee who has already received payment of medical bills by a no-fault carrier. *Bodge*, 560 A.2d at 178; *Dutton*, 554 A.2d at 124–125.

Section 203 provides for a method by which a supplier of insurance can coordinate benefits to avoid making payments to an insured who has already received benefits from a no-fault carrier. So long as the particular insurance scheme complies with the terms of the statute, a provision limiting coverage is valid. According to the *Dutton* court, "Section 203(a) requires that when a medical or hospitalization plan is paid for by the employer ... savings which result from the existence of

---

**2.** Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

No-fault benefits are to be passed on to the employee." *Dutton*, 554 A.2d at 126.

Plaintiffs allege that no such savings were returned to the insured employee in this case. In her affidavit, Ms. Meshyock states: "At no time did I receive any reduction in premium or return of savings from Connecticut General as a result of my being an insured under the Connecticut General policy or as a result of Connecticut General's no-fault exclusion." Affidavit of Lillian Meshyock, ¶ number 2, filed with court April 13, 1988 and docketed number 50.

The *Dutton* court makes clear that it is not the insurance company who realizes a reduction in cost, but rather the person or entity paying the premiums. If an insurer limits the scope of its coverage then it will necessarily charge less for the policy. It is the employer who pays the premiums for a group policy; therefore, it is the employer who must pass the savings onto the employee.

The standard for establishing a return of savings to an employee as a result of a coordination of benefits is not high. In *Dutton*, the court received an affidavit in support of the defendant insurance company's motion for summary judgment which persuaded the court to conclude that the savings that resulted from the existence of the no-fault benefits were indirectly realized by the employee.

[The affidavit] states that actual claims made in the past affected the rates charged and the dividends payable to the employer. It is contemplated that these benefits will be passed to the employee through "better wages, working conditions, and other benefits." One can perceive that the absence of a coordination of benefits clause will result in greater claim payments with a resulting increase in premium charges and decrease of payable dividends. In short, the policy which Appellant's employer purchased at a certain rate, included a coordination of benefits provision and this clear and unambiguous contract provision must be enforced since it does not violate the pronouncements of Section 203.

*Dutton*, 554 A.2d at 126–27.

As in *Dutton*, defendant Connecticut General has filed an affidavit from Jerry Strouse, the Employee Relations Manager at ELCO, in support of its motion for summary judgment which states that premiums paid by ELCO "were adjusted year to year to directly account for prior benefits paid." Affidavit of Jerry Strouse, ¶ number 14, Exhibit B attached to Defendant's Memorandum of Law filed June 1, 1990. The content of Jerry Strouse's affidavit directly tracks the information contained in the *Dutton* affidavit: prior claims affect the rates charged to the employer. Following the reasoning of the Superior Court, which contemplates that the reduced cost of premiums will pass to the employee through "better wages, working conditions, and other benefits," *Dutton*, 554 A.2d at 126, this court holds that there is sufficient information from which to conclude that the savings accumulated as a result of section twelve's general limitation were passed to the employee.

Plaintiffs assert that both *Dutton* and *Bodge* were incorrectly decided and they rely on *Steppling v. Pennsylvania Manufacturers' Association Insurance Company*, 328 Pa.Super. 419, 477 A.2d 515 (1984) to support their contention that they are entitled to be reimbursed by Connecticut General. *Dutton* and *Bodge*, however, are not in conflict with the holding of *Steppling*. All three cases discuss Section 203(a) and the requirements that must be met in order to successfully coordinate benefits. In both *Dutton* and *Bodge*, the requirements were met; benefits were deemed coordinated and double recovery was not allowed. In *Steppling*, the requirements were not met, therefore double recovery was permitted. *Id.*, 477 A.2d at 519.

The *Steppling* court quotes the same passage of a treatise entitled *The Pennsylvania No-fault Motor Vehicle Insurance Act* as the *Dutton* court does, which states:

The "benefits other than no-fault benefits" referred to in Section 203(a) clearly

**1234**

envisions medical and hospitalization plans paid for in whole or in part by the victim's employer. *This section does not prevent the victim from realizing a double recovery.* It simply requires that any savings which result from an offset provision in any medical or hospitalization plan must be passed on to the individual employee. (emphasis in original).

*Steppling,* 477 A.2d at 519 and *Dutton,* 554 A.2d at 125–26, quoting D. Shrager, ed., *The Pennsylvania No-fault Motor Vehicle Insurance Act,* 148 (1979).

The *Dutton* court carefully distinguished the circumstances of the *Steppling* case in reaching its conclusion and noted that "[t]he *Steppling* court did not hold that Section 203 required double recovery," it merely permitted such coverage based on the facts before it. *Dutton,* 554 A.2d at 126.

Moreover, the *Bodge* court, which held that the coordination of benefits clause was valid, expressly stated that its holding was "not in conflict with previous decisions by this Court in which we have determined that where an individual has private collateral benefits in addition to coverage under the No–Fault Act, the No–Fault Act does not prevent that individual from realizing a double recovery." And it cited *Steppling,* 477 A.2d 515. *Bodge,* 560 A.2d at 178.

Although the Pennsylvania Supreme Court has not yet ruled on the precise issue presented in *Dutton, Bodge* or *Steppling,* it is the opinion of this court that the Supreme Court will rule consistently with those decisions when the occasion arises.

Plaintiffs are correct that an insured, under certain circumstances, may be entitled to double recovery. In this particular case, however, where the express language of the policy clearly excludes from coverage expenses reimbursable under a no-fault policy, and, according to the affidavit of Jerry Strouse and the rationale of the *Dutton* court, the savings obtained by ELCO by virtue of this exclusion have inured to the benefit of the employee, the statutory requirements of Section 203 are satisfied, thus rendering the exclusionary

clause valid and enforceable. Defendant Connecticut General properly refused to pay plaintiffs costs that had already been reimbursed by Ms. Meshyock's no-fault policy, and is therefore entitled to judgment as a matter of law.